## CLOVER SPLINT COAL CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8007.

Circuit Court of Appeals, Third Circuit.

Argued July 17, 1942.

Decided Aug. 19, 1942.

Arthur S. Dayton, of Charleston, West Va. (William Wallace Booth, of Pittsburgh, Pa., on the brief), for petitioner.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before MARIS and JONES, Circuit Judges, and LEAHY, District Judge.

MARIS, Circuit Judge.

This is a petition filed by Clover Splint Coal Co., Inc., to review a decision of the Board of Tax Appeals determining a deficiency in income tax against it for the year 1937. The tax involved is the tax on undistributed net income imposed by Section 14 of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, page 823, and the question is whether the taxpayer is entitled to a credit under Section 26(c) of the act, 26 U.S.C.A. Int.Rev.Acts, page 836, by reason of the existence of a contract expressly prohibiting the distribution by it of dividends or expressly directing the disposition by it of its earnings and profits to the reduction of its debts. The facts are not in dispute and may be summarized as follows:

The taxpayer is a West Virginia corporation engaged in mining coal (in Harlan County, Kentucky), whose books are kept in Pittsburgh, Pennsylvania, and which filed its income tax returns for the calendar years 1934 to 1937, inclusive, with the Collector for the Twenty-third District of Pennsylvania.

Under date of May 1, 1929, taxpayer executed a mortgage to trustees to secure an issue of notes maturing May 1, 1936, for the aggregate principal sum of $500,-000. The mortgage provided, among other things, that the taxpayer should deposit with the corporate trustee twenty cents for each ton of coal mined at such times as the aggregate of the outstanding notes should be less than $300,000, and twenty-five cents per ton of coal when the aggregate princi-

pal amount of the outstanding notes exceeded $300,000. There were also certain provisions as to minimum sinking fund requirements.

The mortgage was subsequently modified by three indentures executed under dates of April 10, 1931, August 1, 1932, and August 20, 1934, respectively, by the taxpayer, the noteholders, and the trustees. Each modification relieved taxpayer of some of the more immediate of its obligations under its mortgage, the net effect of all the amendments being to extend the maturity of taxpayer's secured notes to May 1, 1941, to relieve taxpayer from making sinking fund payments for the period May 1, 1932, to November 1, 1936, and to postpone and defer the dates for paying interest on some of the taxpayer's outstanding secured notes. These modifications were conditioned upon various stipulations, those pertinent to the taxable year 1937 being as follows:[1]

"The said party of the first part shall make no payments in the nature of dividends to its stockholders except it shall have previously paid to the Corporate Trustee an amount which would have been equal to the amount of sinking fund payments that would have been paid under and by virtue of said mortgage dated the first day of May, 1929, and said indenture dated the 10th day of April, 1931, or, at the election of said Clover Splint Coal Company, after it shall have required [acquired] notes secured by said mortgage in an amount equivalent to such amount of sinking fund requirements.

\* \* \* \* \* \*

"The Clover Splint Coal Company shall make no payments in the nature of dividends to its stockholders, except that it shall have previously paid all interest coupons upon said outstanding notes accruing during the period aforesaid and interest upon said coupons as hereinafter set forth."

The several indentures modifying the original terms of taxpayer's mortgage were executed and effective prior to May 1, 1936, and upon that date and at all times thereafter (to at least the end of the year 1936) taxpayer had not met and was unable to meet the conditions precedent to the payment of dividends, quoted above. At the commencement of the year 1937, and at all times prior thereto and during that year until the release of the mortgage (on No-

[1] The quoted modifications were made in the supplemental indenture of August 20, 1934.

vember 1, 1937) taxpayer did not and could not make, and did not have funds or income, either accumulated or accrued, sufficient to make the various payments required to be made by the modifications of the mortgage as a condition precedent to the payment of any dividends.

Taxpayer reported substantial losses upon its income tax returns for 1934 and 1935 and a small profit for 1936. At the commencement of the year 1937 it had a deficit, in accordance with the adjustments made by the Commissioner, in the amount of $435,614.86. Its income for the calendar year 1937, after the allowance of depletion as determined by the Board was $51,759.95.

As required by the modified mortgage taxpayer made payments in varying amounts to the corporate trustee during the first ten months of 1937 to the aggregate of $71,868.79. In addition to this sum there remained due as of November 1, 1937, interest in the amount of $26,335.98 on taxpayer's notes, including interest on overdue coupons, which sum taxpayer paid to the trustee October 20, 1937. These amounts totaling $98,204.77, together with a balance of $589.17 in the hands of the corporate trustee on January 1, 1937, were disbursed by it prior to November 1, 1937, in part for the retirement of some of taxpayer's mortgage notes (as required under its mortgage and the modifications thereof) and in part for the payment of interest on taxpayer's notes and coupons. These payments were required of taxpayer under the provisions of the mortgage and modifications thereof, all of which were in full force and effect until November 1, 1937.

Following payment of all interest due them up to November 1, 1937, the holders of taxpayer's outstanding notes exchanged their remaining notes, par for par, for an issue of taxpayer's six percent Prior Preference Stock. This exchange was effected as of November 1, 1937, and as of that date the amended and modified mortgage was released and taxpayer. was relieved of the several covenants with respect to the payment of dividends. The action of the note-holders in exchanging their notes for stock was voluntary on their part. Between November 1 and December 31, 1937, taxpayer paid dividends in the amount of $2,812.50 out of earnings subsequent to November 1, 1937, for which the Commissioner allowed it a dividends paid credit.

The Board of Tax Appeals held that the taxpayer was not entitled to a credit under Section 26(c) and sustained the tax determined by the Commissioner against the taxpayer's undistributed net income for the year 1937. The taxpayer contends that the credit should be allowed because it was prevented from distributing its profits as dividends by the express terms of the mortgage indenture as modified and because the indenture as modified in effect disposed of its earnings and profits for the reduction of its debt. It makes these contentions only in respect of its net income for the first ten months of the year and concedes that it is entitled to no such credit in respect of the net income earned after November 1, 1937, as of which date the mortgage was released.

The taxpayer's first contention is based upon paragraph (1) [2] of Section 26(c), which authorizes a credit equal to the net income which cannot be distributed within the taxable year as dividends "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends." It is conceded that such a contract provision was in effect during the first ten months of 1937. But during the last two months of the year the distribution of net income as dividends would have violated no contractual provision. Indeed a dividend distribution was actually made during that period. Since the statutory reference to distribution of profits as dividends "within the taxable year" quite obviously means at any time within the taxable year we think that the Board correctly held that the taxpayer was not entitled to the credit under Section 26(c) (1).

The taxpayer urges that its net income

[2] "(1) Prohibition on payment of dividends. An amount equal to the excess. of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account."

for the first ten months could not have been distributed during the last two months because it had already been paid to the corporate trustee on account of overdue interest and sinking fund payments under the mortgage indenture. The taxpayer has not shown, however, that the cash which it paid to the trustee was actually the proceeds of earnings or profits. On the contrary these funds must have been, in part at least, from other sources since the payments made to the trustee, all of which were made during the first ten months, amounted to $98,204.77 while the total net profits for the full twelve months were only $51,759.95.

Furthermore examination of the provisions of the mortgage indenture as modified discloses that the sinking fund payments were not required to be made out of earnings or profits. On the contrary the agreement was to pay a fixed sum for each ton of coal mined. This sum the taxpayer was bound to pay even though there were no earnings or profits and even though the coal mined was not actually sold. It will, therefore, be seen that even if the taxpayer did use cash partly derived from earnings to make the sinking fund payments it did so as a matter of practical convenience and not under the compulsion of a contractual obligation.

The sinking fund payments were for the purpose of reducing the taxpayer's debt. They were, therefore, capital expenditures and as such payable out of any funds on hand. They were not expense payments which would have been deductible from income. Consequently the sinking fund payments did not wipe out the earnings of the year, but the latter continued to be available for distribution as dividends and might, so far as the taxpayer's contractual obligations are concerned, have been declared in December, 1937, payable in cash derived from borrowings or other sources or in other available property. The distinction which the taxpayer overlooks is the accounting one between the payment of a debt, which, since it reduces assets and liabilities equally, leaves net worth (including the accumulated profits which form part of it) unchanged, and the payment of a dividend, which, since it involves the distribution of accumulated profits and does not affect the liabilities, reduces net worth as well as assets.

We are here concerned only with the question whether the taxpayer was contractually prohibited from distributing profits as dividends at any time during the year 1937. We are not concerned with the question whether the taxpayer was prohibited by law from declaring dividends at any time in 1937. Helvering v. Northwest Steel Mills, 1940, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29. Consequently the taxpayer's contention that as a corporation with a capital deficit it was prohibited by the law of West Virginia, the state of its incorporation, from declaring any dividends in 1937 is beside the point.

What has been said above also disposes of the taxpayer's contention that it is entitled to the credit under paragraph (2) [3] of Section 26(c), which authorizes a credit equal to the amount of earnings and profits of the taxable year "required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt." The mortgage indenture upon which the taxpayer here relies does not, as we have already pointed out, expressly or by implication deal with the disposition of earnings and profits. Consequently there is no basis for the allowance of a credit under Section 26(c) (2).

The decision of the Board of Tax Appeals is affirmed.

---

[3] "(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."