## FOREST PRODUCING CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8073.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 4, 1942.

Decided Dec. 3, 1942.

· Charles B. McInnis, of Washington, D. C. (Byron Wolfe, Wolfe & Wolfe, and James D. Wolfe, all of Bradford, Pa., and Roberts & McInnis and G. Kibby Munson, all of Washington, D. C., on the brief), for petitioner.

Arthur Manella, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Special Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The petitioner, Forest Producing Corporation, seeks review of a decision of the Board of Tax Appeals, now the Tax Court of the United States. The taxpayer's complaint is the alleged error of the Board in affirming the Commissioner's determination of deficiencies in income taxes against it for the years 1936 and 1937. These deficiencies came through refusal to allow a claimed credit under the provisions of § 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836,[1] in the computation of its undistributed profits surtax. Petitioner's case turns upon the question whether it comes within the clause of the statute cited concerning a contract expressly dealing with the payment of dividends.

The contract depended upon must be worked out through a series of transactions. The first of these is an agreement of sublease dated May 4, 1935, which the Forest Oil Corporation (parent of the present taxpayer) entered into with the Warner-Caldwell Oil Company of Titusville, Pennsylvania, whereby Warner-Caldwell subleased to Forest Oil Corporation certain oil and gas properties in the State of Oklahoma. It is to be noted that the petitioner was not a party to this transaction; it had not yet been organized. The second step was an instrument of sublease bearing date of June 26, 1935, with the Warner-Caldwell Oil Company as lessor and the petitioner as lessee. The petitioner had come into being under the laws of Pennsylvania between these two dates. This instrument was signed by the lessor only and the demise was made subject to the terms, etc., of the May 4 agreement. The properties leased to the taxpayer by this transaction were the same as those covered by the sublease agreement of May 4 already described. The next step, taken in accordance with the conditions imposed by the agreements of May 4 and June 26, was that the taxpayer corporation executed a surrender of the sublease.[2] This document and a copy of the agreement of May 4 were deposited in escrow with a bank in Titusville, Pennsylvania, the escrow agreement, bearing date of December 2, 1935, being signed by Warner-Caldwell Oil Company, the Forest Oil Corporation and the taxpayer. The bank was instructed that it was to hold the surrender merely as a matter of convenience. By the terms of the agreement of May 4, however, the sublessee was to forfeit the

---

[1] "§ 26. Credits of Corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*    \*    \*    \*    \*

"(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \*  \*  \*"

[2] The release recited that the agreement of May 4 had been assigned to the taxpayer.

sublease if it failed to keep the provisions of the agreement.

The Commissioner's contention is that the test for determining whether these transactions are sufficient under § 26(c) (1) of the Revenue Act is not the same test used to determine whether the result in the assumption of the obligations is binding upon the taxpayer. The taxpayer makes the double contention: first, it says that the transactions related above are sufficient as a contract within the statute and, second, that the Commissioner cannot raise the point in this Court because the sufficiency of the contract was conceded before the Board of Tax Appeals. But we may assume, for the purpose of discussion only, that the steps taken by the parties resulted in a contract sufficient in form to satisfy the statute in order to ascertain if its other requirements are met.

Does the contract have a provision expressly dealing with the payment of dividends which a distribution of dividends during the taxable years in question would violate? The one specific allusion to dividends is found in the May 4, 1935 contract between Warner-Caldwell and Forest Oil to which we assume taxpayer subsequently became a party. Article Five of that document is the important one here. It bears the heading "Lessee's Cash Investments." The first two paragraphs of this Article were an agreement by the lessee that it would expend, out of its own funds, a stipulated amount of money within three years in the installation of Water Flooding Process and the development by such process of the oil properties. It should be added for clarity that the lessee was a corporation with experience in this type of process in oil extraction and its officers were considered experts therein.

Paragraph 3, which will come in for discussion presently, provides for the reinvestment of earnings from the properties in further development.

Paragraph 4 is the one which contains the words about dividends. The arguments about it can hardly be settled without having the language before one. It provides: "After the expiration of the first four years next following the said date of tenancy, the Lessee agrees to continue the said Water Flooding Process, as that expression is defined in Article Two hereof, and operate and develop the Oil Properties in a good and workmanlike manner for the mutual benefit and advantage of the Lessor and the Lessee either through the said Water Flooding Process or such other process or method of operation as shall in the judgment of both parties hereto be best suited to maintain and if possible increase the production of oil from the said Oil Properties; but in the event there should at any time be (a) an over-production of oil in the Oklahoma oil fields or (b) the price of crude oil produced from the Oil Properties should fall to such a low figure that further development of the said Oil Properties should be curtailed or entirely stopped, then further development of the Properties shall be curtailed or entirely stopped for such period of time as both parties hereto may agree upon; but during such period of curtailment or entire stoppage of such development, the proportion of income over and above operating costs and expenses which should be ordinarily expended by the Lessee for additional development shall be withheld by the Lessee and not paid out in dividends but set aside and impounded until both parties hereto agree that such development work should be resumed, when such sum of money, so set aside and impounded by the Lessee shall be used in and expended in extending and completing such development work according to the terms and provisions hereof."

The taxpayer relies strongly upon the above quoted paragraph. It argues, however, that the paragraph does not refer solely to events which might occur after a four year period, but that the agreement for impounding earnings and not paying them out in dividends is applicable "at any time" there is either over production in the Oklahoma oil fields or the price of crude oil should fall too low. The argument is heavily labored for to accept it requires a breaking up of one paragraph which is all contained in a single sentence. The paragraph starts out talking about events after the expiration of the first four years of the tenancy. To apply part of that same sentence to conditions arising in the first three years of the tenancy would require us to do some rather severe editing upon the work of the draftsmen. Even if we did it we do not see how it would help the taxpayer. The agreement to segregate and impound these earnings becomes effective only if one of two things happens, over production in the Oklahoma field or the falling of the price of crude oil to a point indicating the desirability of curtailment of further development. We are not shown that either con-

tingency occurred. It is unnecessary to labor the point that such provision is alone insufficient to show a contract which would be violated by the distribution of dividends. The conclusion is clear that the part of paragraph 4 just discussed does not aid the taxpayer in this case no matter whether it stands by itself or is tied into paragraph 3.

[redacted] This brings us to the question whether paragraph 3 alone is a contract which has a provision expressly dealing with the payment of dividends which a distribution would violate. Paragraph 3 says that in addition to the investment in development which the lessee is to make, which has been stated above, "the Lessee, shall, during the first four years next following the said date of tenancy, reinvest * * * in the further development of the Oil Properties all sums of money received by it from the sale of oil and gasoline produced therefrom, * * *" after deduction of expenses. It certainly will have to be conceded that this language does not mention dividends. Likewise, it must be taken for granted that § 26(c) which grants a special tax exemption must be strictly construed and exact compliance with its terms shown by the taxpayer. Helvering v. Northwest Steel Rolling Mills, 1940, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; Helvering v. The Ohio Leather Company, 1942, 63 S.Ct. 103, 87 L.Ed. —. The provision must be explicit and "contemplations, and unexpressed understandings of the contracting parties," are not enough. Commissioner of Internal Revenue v. Dulup Oil Co., 5 Cir., 1942, 126 F.2d 1019. There is still room for argument that the contract is sufficient to comply with the exemption clause of the statute if the necessary effect of its express terms precludes the distribution of dividends whether the latter are mentioned by name or not. We do not settle that question because we do not think it necessarily controls this case. The lessee did not promise not to pay dividends. It did promise to put back into further development the gain realized from the sale of oil and gasoline from these properties over a given period. We do not think that the language requiring such investment in further development demanded that the funds so received be kept in specie or even that they actually be segregated in a separate account. When the parties had such segregation in mind they provided for it as in paragraph 4. We think that what the Warner-Caldwell Company was insisting upon was that further money be spent in development in a sum equal to the gains of what prior development had produced in a given period. If the taxpayer had, from time to time, issued new shares equal to this amount, put this into development and then distributed the profit out of the oil properties, we do not think the lessor would have had any occasion to complain. Moreover, to the extent that the development was successful it increased the surplus of the operating company. If the latter put that surplus back into further development it still would show on the credit side of the ledger and this balance the company would be entitled to distribute as dividends if it could and wished to borrow the money to do so.[3] Cf. Clover Splint Coal Co., Inc., v. Commissioner of Internal Revenue, 3 Cir., 1942, 130 F.2d 52.

Our conclusion is that even on the assumption that the transactions outlined above make out a contract in form sufficient under the statute the taxpayer has failed to show that it could not have distributed dividends without violating the contract in question.

[redacted] Another point came into the case, however, upon the oral argument which took place shortly after the passage of the Revenue Act of 1942 and the taxpayer has raised it there and in its reply brief. The petitioner has represented that there was a deficit in its accumulated earnings and profits as of the close of the taxable year 1935 and that under the law of Pennsylvania, the State of its incorporation, in effect prior to May 1, 1936, it was prohibited from paying dividends during the existence of such a deficit. The parties have stipulated the case may be remanded to the Tax Court of the United States for the purpose of determining the effect upon this taxpayer of § 501(a) (2) of the Revenue Act of 1942, amending Revenue Act 1936 § 26 (c) (3), 26 U.S.C.A. Int.Rev.Acts.

The decision of the Board of Tax Appeals is reversed and the cause remanded to the Tax Court of the United States for

3 Article VII of the Pennsylvania Business Corporation Law, 15 P.S. § 2852—701 et seq., authorizes the payment of dividends out of surplus and contains no limitation or restriction upon borrowing, to do so, against surplus invested in capital improvement. This procedure had been approved in numerous instances in other jurisdictions. See Annotation, 1928, 55 A.L.R. 8, 39.

the purpose of determining the application and effect of § 501(a) (3) of the Revenue Act of 1942. In all other respects the decision of the Board of Tax Appeals is affirmed.