## HELVERING v. MAGNUS BECK BREWING CO., Inc.

### No. 58.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1942.

A. F. Prescott, Sp. Asst. to Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Edward First, Sp. Assts. to the Atty. Gen., for petitioner.

Charles J. Wick and Garono, Jaeckle & Kelly, all of Buffalo, N. Y., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The Commissioner appeals from an order of the Tax Court expunging a deficiency assessed against the taxpayer for the year 1936 under § 14(b) of the Revenue Law of that year, 26 U.S.C.A.Int. Rev.Acts, page 823. The single question is whether in computing its "undistributed net income" under § 14(a) (2) for the year in question the taxpayer can properly deduct certain sums under § 26(c) (2), 26 U.S.C.A.Int.Rev.Acts, page 836, on the ground that "a written contract" made by it in 1934 "expressly" dealt "with the disposition of earnings and profits of the taxable year." The facts upon which the taxpayer has been allowed the deduction are as follows. It is a brewer and has no other source of "earnings and profits" than its sales of beer. In 1934 it found itself so financially embarrassed that in order to

procure any further extension from its creditors it was forced to make some kind of arrangement with them. On January 31 it made a written contract with all of them and with a trustee of their selection, by which they extended the due date of their claims in consideration, among other things, of the taxpayer's promise to pay to the trustee "Fifty cents (50¢) per barrel, on all beer sold during the months of April and May, 1934, and One Dollar ($1.00) per barrel on all beer sold thereafter." The trustee was given power to "waive" these payments "if he shall deem such waiver expedient and necessary"; but in case the taxpayer defaulted upon any of the payments the trustee might foreclose a mortgage given as security for performance. In the year 1934 the beer was sold at a loss of fifteen cents a barrel, in 1935 at a profit of eighty-eight cents, in 1936 of ninety-three cents. The taxpayer in the last year paid $47,332.98 to the trustee under this contract which it deducted from its "adjusted net income" under the assumed privilege given by § 26(c) (2). This sum came to about seventy-three cents a barrel, the trustee having apparently "waived" the difference of twenty-seven cents. (There was a collateral oral understanding that the taxpayer should pay its debts "from earnings.") The Tax Court held that, since all payments made by the taxpayer had to come from receipts from the sale of beer (it had no other available funds), they necessarily included "earnings and profits of the taxable year," if there were any and that this satisfied § 26(c) (2).

In Helvering v. Moloney Electric Co., 8 Cir., 120 F.2d 617, the Eighth Circuit refused to allow a deduction based upon a provision in a mortgage that the mortgagor should each year pay two per cent of an outstanding issue of bonds. In C. C. Clark, Inc. v. United States, 5 Cir., 126 F.2d 292, 293, the Fifth Circuit similarly refused to allow the deduction of payments required to be made "out of the income of the corporation without regard to the source." (The ground here appears to have been that the "income" of an earlier year might be used if necessary to piece out that of a later.) In Nevada-Massachusetts Co. v. Commissioner, 128 F.2d 347, 351, the Ninth Circuit held that § 26(c) (2) did not apply to a case where the contract required the taxpayer to make payments "out of the net proceeds of the operation" of a mining company all of whose assets it had bought on sheriff's sale, "and out of any other moneys which" the taxpayer "may have available." It will be observed that in all these cases, although the taxpayer's duty extended beyond the "earnings and profits" of the taxable year, the normal course would have been to make the payments "required" first out of these. The taxpayer argues, however, that the contract at bar "expressly deals with the disposition of earnings and profits," because, unlike the cases just cited, it could in fact make the payments only out of the proceeds from the sale of beer because it had no other funds; in other words that it is not necessary for the contract so to provide, if the circumstances in fact compel the taxpayer to resort to "earnings and profits" for the taxable year. This argument was successful in Commissioner v. Michigan Silica Company, 6 Cir., 124 F.2d 397, where the contract required the taxpayer to deposit in a sinking fund twenty-five cents for each ton of sand sold; and although it was not successful in Clover Splint Coal Co. v. Commissioner, 3 Cir., 130 F.2d 52, the payments there were to be made per ton of coal mined, whether sold or not. Such payments are flat within Article 26-2(c) (3) of Treasury Regulations 94.

If we construed the section according to its underlying purpose, this argument might prevail; the payments required did in fact prevent any accumulation of earnings and profits which was the evil aimed at. But that was also true in the three cases we mentioned a moment ago, and it was true too in Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29. The limited words of the section were chosen deliberately and, although they should not be read in entire disregard of the background of the general purpose, they were certainly not intended to execute that purpose completely. Congress apparently preferred a ready test to the uncertainties which might attend a full measure of relief. In our judgment we are to look to the contract alone; we must find that it gave the taxpayer no legal escape from making the payments out of "earnings and profits." True, it may seem to make no difference whether a company puts its hand into one pocket or the other; and indeed it does not from the point of view of its balance sheet. But it is plain that the statute meant to make a difference. Suppose the taxpayer at bar had carried over from 1935 a sur-

plus large enough to pay a dollar a barrel upon every sale made in 1936, and had used it for that purpose. Nobody will say that it could have deducted the amounts. Suppose, however, that it had used the "earnings and profits" of 1936 to make the payments, leaving the surplus intact. Since the contract did not compel it to do so, for it said nothing about the source of the payments, again it could not have deducted the payments; the deduction is not to be a matter of choice. Nor can it depend upon whether the taxpayer carries over a surplus from one year to another, so that it can be said of the same contract that in one year it "expressly deals with the disposition of earnings and profits" and in another it does not. It is the legal compulsion of the contract itself, not the straits to which it drives the taxpayer, which determines the issue. The Commissioner is not obliged to examine the taxpayer's business and decide how much of what the contract calls for, it could not avoid paying out of current "earnings and profits."

Order reversed; assessment reinstated.