420

**AUTOMOTIVE PARTS CO. v. COMMIS-
SIONER OF INTERNAL REVENUE.**
No. 9278.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1943.

Howard Morgan Jones, of Columbus, Ohio, for petitioner.

Muriel S. Paul, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Samuel H. Levy, and Muriel S. Paul, and of Washington, D. C., on the brief), for respondent.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This is a proceeding for review of a decision of the United States Board of Tax Appeals (now United States Tax Court).

A single issue is presented, whether the petitioner was entitled to a dividends paid credit of $25,000 under Section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Acts, page 836, by reason of an alleged written contract executed prior to May 1, 1936, expressly dealing with the payment of dividends within the meaning of Section 26(c).

Petitioner is a corporation organized and existing under and by virtue of the laws of the State of Ohio. In October 1934, the estate of H. G. Root, deceased, owned 628 shares of petitioner's outstanding stock and petitioner wished to acquire this stock for its treasury. In October 1934, petitioner's president, with the knowledge and informal unrecorded consent of its Board of Directors, commenced negotiations with the American Brake-Blok Corporation to borrow from it $25,000 to be used in the part purchase of the Root shares. Petitioner obtained the written consent of the owners of two-thirds of its other outstanding stock to purchase the Root shares at $150 per share.

On November 1, 1934, the Brake-Blok Corporation telegraphed petitioner's president in reference to the negotiations for the loan that "your creditors should have protection of provision regarding future dividends of Auto Parts during period notes are outstanding." By letter of November 2, 1934, petitioner's president stated inter alia:

"In regard to the matter of dividends, I will be perfectly willing to enter into any reasonable agreement thereon, keeping in mind the point that I have heretofore entered into obligations with friends who have advanced me money for my first purchase, said obligations totalling approximately $18,000.00, payable one-third or approximately $6,000.00 each year for three years. This figure includes the accumulated interest.

"I look to dividends upon my present holdings (after the estate stock is purchased and retired) to liquidate this indebtedness. This reservation as to dividends will not affect the status of your loan upon the figures formerly presented to you for the reason that said dividend sum has entered into my calculations since a time prior to conferring with you and was also covered in the copy of the cash budget which I mailed to you with my letter and financial statement. * * *

"I would also appreciate your mailing me a copy of the agreement which you think

we should enter into covering this whole transaction."

By letter of November 8, 1934, to petitioner's president, Brake-Blok stated inter alia, "We understand the situation regarding dividends and are entirely satisfied."

The stock in question was purchased, the loan consummated from the Brake-Blok Company and applied thereon. Petitioner's Board of Directors knew of the negotiations conducted by its president with the American Brake-Blok Corporation and the terms and conditions thereof, but no record of the knowledge of the Board of Directors or of the other stockholders was incorporated in the minutes of petitioner's Board of Directors.

However, on December 31, 1934, the Board of Directors passed a resolution authorizing the purchase of the stock at $150 per share and that the surplus of the corporation be utilized for that purpose.

The members of petitioner's Board of Directors were the sole owners of its capital stock. On December 31, 1934, petitioner, by its president, notified the American Bake-Blok Corporation by letter that petitioner's Board of Directors had taken final action to complete the purchase of the Root stock and that they were sending by mail eight of petitioner's notes, together with check for $50.04 interest due on the notes from December 13th to December 31st. On December 30, 1935, petitioner's Board of Directors declared a dividend of $6,084 on petitioner's outstanding common stock payable at the close of business December 1, 1935. The last installment on petitioner's obligation on the Brake-Blok loan was paid on January 2, 1937.

Petitioner filed its income tax return for the calendar year 1936, and claimed a dividends paid credit of $25,000 on account of the heretofore-mentioned alleged contract restricting the payment of dividends under Section 26(c) (1) of the Revenue Act of 1936. On audit and review, the Commissioner of Internal Revenue disallowed the claimed credit finding as a fact that the petitioner had not prior to May 1, 1936, executed a written contract expressly dealing with the payment of dividends within the meaning of the applicable statute and found a deficiency in taxes of $1,834.07. On appeal, the Board of Tax Appeals sustained the Commissioner.

The question for our determination is whether petitioner is entitled to the credit claimed by it because it was prohibited by a contract between petitioner and the Brake-Blok Corporation from paying dividends. Section 26(c) (1) of the Revenue Act of 1936, ch. 690, 48 Stat. 1648, 26 U.S.C.A. Internal Revenue Acts, page 836, provides that a corporation shall be allowed this credit only when the distribution of a dividend would be in violation of a provision of a written contract executed by the corporation prior to May 1, 1936. The Board rested its decision on the ground that the telegrams and letters on which petitioner relies as establishing the contract were written prior to December 3rd and 8th, 1934, the first dates on which petitioner's stockholders authorized it to purchase the shares of stock in question and on the further ground that the entire terms of the contract were contained in Brake-Blok's letter of December 7, 1934, and that as this letter contained no statement restricting the payment of dividends, no written contract relating to dividends was made.

The distinction between a definite proposal or acceptance and a mere preliminary step in the negotiation of a contract is not always easy of determination. From the nature of the subject the question whether certain acts or conduct constitute a definite proposal or acceptance upon which a binding contract may be predicated without any further action on the part of the person from whom it proceeds, or whether it constitutes a mere preliminary step which is not susceptible without further action by such party of being converted into a binding contract, depends upon the nature of the particular acts or conduct in question and the circumstances attending the transaction. The facts in the case at bar show that the intent of the parties was to make the so-called preliminary negotiations a binding part of the contract without further action. The parties expressly stated "as far as a contract goes we feel an exchange of letters can easily cover our transaction with you." The Board of Directors of petitioner on December 31, 1934, declared a dividend of $6,084 which was approximately the amount petitioner's president stated to the lender he would have to have in dividends to meet his outstanding obligations.

On December 31, 1934, the Board of Directors of petitioner passed a resolution providing that the holders of the company's notes the proceeds of which were used to purchase the stock in question

should be permitted to attend all directors' meetings and sit therein and that any note holder should have the right to make an audit of the company's affairs and records at any time until said notes were paid. A binding agreement between parties may be connoted from several different writings which, when connected, show the subject matter, terms and consideration and all of the papers in the series, if not in conflict, constitute the terms of the contract. In our opinion, the telegram and letters between petitioner and its creditor, the Brake-Blok Corporation, were more than an exchange of tentative ideas or preliminary negotiations regarding a restriction on the payment of dividends and the documents are sufficiently definite and explicit to constitute a written, enforceable contract by petitioner's creditor, which would have been violated by respondent had it paid dividends in excess of $6,000.

The order of the Board is reversed and the cause remanded for further proceedings consistent with this opinion.