# HARDING GLASS CO. v. COMMISSIONER OF INTERNAL REVENUE.

# HANNEGAN, Com'r of Internal Revenue, v. HARDING GLASS CO.

## Nos. 12767, 12799.

Circuit Court of Appeals, Eighth Circuit.

April 12, 1944.

Joseph R. Brown, of Fort Smith, Ark., for Harding Glass Company.

Warren P. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before SANBORN, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

These petitions to review a decision of the Tax Court of the United States involve deficiencies determined by the Commissioner in income taxes reported by the taxpayer, Harding Glass Company, for the years 1936 and 1937.

In No. 12,767 the question is whether the taxpayer, under any one of several written contracts executed by it prior to May 1, 1936, is entitled to the credit allowed under section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, as against the surtax imposed by section 14 of the Act, 26 U.S.C.A. Int. Rev.Acts, page 823, on corporate profits earned but not distributed as dividends during the taxable year. Section 26(c) (1) allows a deduction from the corporate adjusted net income of any sums which could not be distributed as dividends "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends." The Commissioner ruled that the contracts relied on by the taxpayer in support of the credits claimed for both 1936 and 1937 did not comply with the provisions of the section of the statute granting the credit. The Tax Court approved.

In No. 12,799, the issue is whether the profit realized by the taxpayer on the sale of shares of stock in another corporation under a written contract of sale of June 28, 1937, providing for the payment of the sale price in monthly installments, was attributable to the year 1937, or to the years 1938 and 1939 as claimed by the taxpayer. The Commissioner ruled that the income from the sale of stock was realized by the taxpayer in 1937. The Tax Court decided the issue in favor of the taxpayer.

The facts on which decision depends in No. 12,767 are not in dispute. The issue on the taxpayer's petition for review is one of law on which the taxpayer is entitled to prevail if any one of the contracts relied on complies with the conditions of section 26(c) (1) of the Act. We think two of the contracts meet the required test.

On April 27, 1936, the owners of the common stock of the Harding Glass Company, the Fourco Glass Company, and the Harding Glass Company entered into a written contract for the sale to the Fourco Glass Company of all of the shares of common stock of the Harding Glass Company. The sale price of the stock was $350,000, of which $144,000 was to be applied by the sellers to the purchase of outstanding first mortgage bonds of the Harding Glass

Company, and $100,000 was to be paid in deferred installments evidenced by the notes of the Fourco Company and the Harding Company. The contract contained the following agreement between the Fourco Company and the Harding Company:

"The parties of the second [Fourco] and third part [Harding] agree that, until the above described purchase money notes given by second and third parties to Joseph R. Brown, Trustee, and the outstanding bonds of the Harding Glass Company shall have been paid off and discharged, no part of the surplus or the net earnings of Harding Glass Company shall be paid out or expended, except for the following: (a) For the payment of taxes; (b) For the improvements and betterment of the plant and property of the Harding Glass Company; (c) For the payment and discharge of the outstanding bonds of the Harding Glass Company, which are superior in priority and lien to the said purchase money notes above described; and (d) For the payment of the said purchase money notes."

The Tax Court was of the opinion that, while the quoted provision of the contract prohibited a distribution of dividends by the taxpayer (the outstanding bonds and the purchase money notes remaining unpaid throughout the years 1936 and 1937), such a distribution would not violate, as required by the Act, a provision of the contract which "expressly deals with the payment of dividends."

On the 30th day of April 1936 the Fourco Glass Company entered into a written contract with the Diamond Alkali Company for the loan by the Diamond Company to the Fourco Company of $250,000. The money was borrowed by the Fourco Company to be used in payment for the capital stock of the Harding Company. This contract contained the following provision:

"Fourco agrees that, so long as any part of the said loan of Two Hundred Fifty Thousand (250,000) dollars remains unpaid, it will prevent Harding from issuing additional shares of its capital stock, common or preferred, and from creating any lien or encumbrance on any of the assets or property, real, personal, or mixed of Harding (except such liens as may be created in connection with the deferred payments on the 1400 shares being acquired) unless it shall have first had and obtained the written approval and consent of Diamond with respect to the issuance of any such shares or the creation of any such lien.

"Fourco further agrees that, so long as any part of the said loan remains unpaid, it will not permit Harding to declare any dividends without first procuring the written consent of Diamond, and that it will not permit the property and assets of Harding to be depleted in any manner whatsoever except through losses incurred in the ordinary conduct of its business or by payments due on the deferred purchase price of Two Hundred Forty-Four thousand (244,000) dollars on the acquisition of the stock of said Harding Glass Company."

On the day of the execution of this contract, the Harding Glass Company addressed and delivered to Fourco Glass Company a letter signed by it reading as follows:

"This is to confirm the fact that we agree to the conditions stated in a loan agreement made of even date—this 30th day of April, 1936—between you and the Diamond Alkali Co., a Delaware Corporation, with its principal office at Pittsburgh, Pennsylvania.

"We have been fully advised of the detailed conditions stated in such agreement which consists of twelve paragraphs covered in five pages of the paper titled 'Loan Agreement' of which we have been submitted a copy."

The Tax Court found as a fact that at the time of the execution of the contract to which the letter refers the parties decided that it was necessary to make the Harding Company a party to the contract, and that to satisfy the Diamond Alkali Company on this point the letter was written and signed by the Harding Company at the time of the execution of the contract. The instruments were delivered together.

The Tax Court held that the contract between the Fourco Company and the Diamond Company and the letter of the Harding Company to the Fourco Company did not together constitute a contract prohibiting the payment of dividends by the Harding Company within the terms of section 26(c) (1). It was not disputed that during the years 1936 and 1937 the loan to Fourco remained unpaid and that the Diamond Company never consented to a distribution of dividends by the Harding

Company, but the Tax Court was of the opinion that the writings in question, taken together, did not bind the Harding Company not to distribute dividends. It pointed out that the letter signed by the Harding Company contained no express reference to dividends, and that, if considered as a ratification of the contract between Fourco and Diamond, it was ineffective as a basis for the credit claimed, because Harding had merely agreed that Fourco would not permit Harding to distribute dividends, and had not agreed that it would not distribute dividends.

We are unable to agree with the interpretation which the Tax Court has placed upon either of these contracts. While it is true that the right to credit under section 26(c) (1) "must be found exclusively in the language of the contract and be demonstrated completely by it". (Helvering v. Northwest Bancorporation, 8 Cir., 140 F.2d 958, 962); that section 26 (c) (1) granting a special exemption from a tax generally imposed by the Act of 1936. must be strictly construed (Helvering v. Northwest Steel Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29); that a corporation claiming the credit allowed by the section in question is under the burden of showing compliance with the exact terms of the section without resort to implication (Helvering v. Ohio Leather Co., 317 U.S. 102, 106, 63 S.Ct. 103, 87 L.Ed. 113; Valentine-Clark Corp. v. Commissioner, 8 Cir., 137 F.2d 481; Hobbs-Western Co. v. Commissioner, 8 Cir., 133 F.2d 165; Helvering v. N. O. Nelson Co., 8 Cir., 133 F.2d 846); and that the contract relied on by the corporation must be enforceable against the taxpayer and expressly prohibit the payment of dividends during the taxable year for which credit is claimed, it seems clear that the contracts under consideration meet all of these tests.

Obviously, the necessary effect of the express terms of the contract of April 27, 1936, precludes the distribution of dividends. Compare Forest Producing Corp. v. Commissioner, 3 Cir., 132 F.2d 118. A contract which prohibits the distribution of either surplus or net earnings of a corporation except for specified purposes, among which the distribution of dividends is not included, expressly prohibits the payment of dividends, and, therefore, "expressly deals with the payment of dividends" within the meaning of section 26 (c) (1) of the Act, although the word "dividends" does not appear in the language of the contract. The prohibition against the payment of dividends is not one implied by law, but one expressed in the words of the contract. The cases relied on by the Commissioner do not support the opposite conclusion.

The contract of April 30, 1936, between the Fourco Company and the Diamond Alkali Company, together with the letter of the same date signed by the Harding Company, constituted a valid and enforceable agreement between the Harding Company and the Diamond Company, under which the Harding Company was expressly prohibited from the payment of any dividends so long as the loan of the Diamond Company to the Fourco Company remained unpaid. In order to meet the terms of the statute it is not necessary that the contract relied on be contained in one writing. Central West Coal Co. v. Commissioner, 7 Cir., 132 F.2d 190; Helvering v. Magnus Beck Brewing Co., 2 Cir., 132 F.2d 379; Automotive Parts Co. v. Commissioner, 6 Cir., 134 F.2d 420; Monarch Theatres Co. v. Helvering, 2 Cir., 137 F.2d 588; Glenn v. Chess & Wymond, Inc., 6 Cir., 132 F.2d 621. The decision of this court in Mastin Realty & Mining Co. v. Commissioner, 8 Cir., 130 F.2d 1003, does not hold otherwise. In the Mastin case the decision rested upon the court's finding that the corporation had not sustained the burden of proving a written contract signed by it. Nor can it be said that this contract was not enforceable because without consideration. It is not necessary to the validity of this agreement that the proceeds of the loan involved moved to the Harding Company. It is sufficient that the Diamond Company, in reliance upon the letter of the Harding Company, parted with the amount of the loan which the Fourco Company received. 1 Williston on Contracts, § 113.

The argument on behalf of the Commissioner that the contract of April 30, 1936, fails to meet the requirements of section 26(c) (1) because not made by the Harding Company with one of its creditors is untenable. There are expressions in some of the cases relied on by the Commissioner which, if lifted from their context, seemingly give some support to this contention, but in those opinions the word "creditor" was not used in a limited sense of one to whom the corporation owes a debt, but for the purpose of distinguishing

written contracts imposing an obligation upon the corporation from agreements contained in corporate charters and certificates of stock. We are required to give the language in section 26(c) (1) a literal interpretation, and nothing contained in that section limits the contracts upon which the exemption is granted to those between the taxpayer and a creditor. We can not add a limitation not expressed in the statute. Nor is there merit in the Commissioner's contention that neither of the contracts here meets the terms of the statute because neither fails to prohibit the payment of dividends from earnings of the taxable year 1936 received by the taxpayer before April 27 and April 30, 1936, the dates upon which the contracts were signed by the taxpayer. The exemption is granted in the case of contracts executed prior to May 1, 1936. Such a construction of the statute would require us to ignore its express provisions. The contract prohibited the payment of dividends by the taxpayer at any time in 1936 after its execution.

In No. 12,799 the facts are that on April 28, 1937, the Harding Company sold to the Twin City Pipe Line Company 500 shares of the common stock of the Citizens Gas Company for a consideration of $50,000. The shares of stock had cost the Harding Company $25,000. The sales contract provided for the purchase by the Harding Company from the Twin City Co. of all its requirements of gas not to exceed, however, a stated quantity in any one year. The bills for the gas received by the Harding Company were to be rendered monthly, and it was permitted to deduct 50 per cent of each monthly bill to apply on the sale price of the shares of stock. The contract obligated the Harding Company to purchase its gas from the Twin City Company for a term of 13½ years, and further provided that, if at the end of that time the Harding Company had not received the full purchase price of the stock by deductions from gas bills, the obligation of the Twin City Company to pay the balance of the purchase price should be terminated. At the end of the taxable year 1939 the Harding Company had received the full purchase price for the shares of stock sold to the Twin City Pipe Line Company. It reported its profit on the transaction as income attributable to the years 1938 and 1939. The taxpayer keeps its books on an accrual basis. The Commissioner, taking the position that it was reasonably certain at the time of the execution of the contract of sale that the Harding Company would receive the full purchase price of its stock, attributed the profit on the transaction to the year 1937. The Tax Court disapproved the finding of the Commissioner. The question is one of fact on conflicting evidence, on which the finding of the Tax Court is beyond our power to review. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. —; Helvering v. Meredith, 8 Cir., 140 F.2d 973.

In No. 12,767 the decision of the Tax Court is reversed. In No. 12,799 the decision of the Tax Court is affirmed.

THOMAS, Circuit Judge (dissenting in part).

I concur in that part of the order affirming the decision of the Tax Court in No. 12,799, but I do not think the decision in No. 12,767 should be reversed. This court held in Helvering v. Northwest Bancorporation, 140 F.2d 958, "that the right to the exemption or credit under section 26(c) (1) must be found exclusively in the language of the contract and be demonstrated completely by it, and that Congress did not intend that any part of such a right could be pieced out of collateral material." In construing § 26(c) (2) Judge Learned Hand, speaking for the Second Circuit Court of Appeals, said in Helvering v. Magnus Beck Brewing Co., 132 F.2d 379, 380, " * * * we are to look to the contract alone; we must find that it gave the taxpayer no legal escape from making the payments out of 'earnings and profits.' "

Under the statute the right to credits is conditioned upon express provisions of written contracts executed prior to May 1, 1936, and not upon implications and future contingencies. Looking to the contracts "alone" in this instance does not disclose such right. To work out a right to the credits claimed here one must consider the changing financial condition of the taxpayer in each succeeding taxable year. If it be found at any time that its debts are paid in full, dividends may be paid; if not, dividends may not be paid and credits may be taken. If the taxpayer may thus look beyond the contracts it may "escape" compliance with the law by merely failing to pay some part of its debts without regard to the amount of its income. In this way its earnings may be accumulated and the purpose of Congress defeated. This seems to be not only contrary to the intent

of the Revenue Act but inconsistent with the decisions of the courts. See Commissioner v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182, 189; Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29. In this situation I can find no "clear-cut mistake of law" in the decision of the Tax Court. Compare Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. ——.