**VALENTINE–CLARK CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12505.

Circuit Court of Appeals, Eighth Circuit.

Aug. 3, 1943.

Rehearing Denied Aug. 31, 1943.

Hayner N. Larson, of Minneapolis, Minn. (Glenn S. Stiles and Faegre & Benson, all of Minneapolis, Minn., on the brief), for petitioner.

Paul S. McMahon, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty.

Gen., and Sewall Key, A. F. Prescott, and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals (now the Tax Court of the United States) affirming the Revenue Commissioner's determination of a deficiency in petitioner's income tax for the year 1936 and for the taxable period January 1, 1937, to June 30, 1937. The question for decision arises under the provisions of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, page 819 et seq., imposing a surtax upon undistributed profits of corporations.

The petitioner is a Washington corporation, having its principal place of business in St. Paul, Minnesota. Prior to the transactions material here, its capital stock was represented by 1,000 shares, all of which were owned by Mrs. Lillian Clark, with the exception of 150 shares held by her daughter, Mrs. Pyle, and 3 qualifying shares held by directors. M. H. Sperry was general manager of the petitioner under a contract fixing his annual salary at $7,500, plus one-half of its net profits. The business of the petitioner was flourishing, but, because it distributed all its profits each year to Mr. Sperry in payment of his salary as general manager, and to Mrs. Clark and Mrs. Pyle in the form of dividends, it was constantly in need of capital with which to conduct its operations. In this situation the petitioner applied to a bank in Minneapolis for a line of credit to meet its capital needs. The bank offered to extend credit on condition that salaries and bonuses to officers should be held to an absolute minimum, and that no dividends should be declared until such time as the petitioner had accumulated sufficient working funds with which to conduct its operations, and upon the further condition that Mr. Sperry acquire an interest in the corporation.

Mrs. Clark and Mr. Sperry undertook to meet the terms imposed by the bank. To that end they entered into a written contract with the petitioner in which the parties agreed that, in order to secure the desired extension of credit by the bank, and for so long as the petitioner remained indebted to the bank because of the extension of the credit, Mrs. Clark would not make or permit "withdrawals from corporate funds" to herself or any members of her family by way of salaries, dividends, loans, or advances in excess of $6,000 per year; and that Mr. Sperry in the same circumstances would "not draw out in cash more than $6,000 per year" under his contract of employment as general manager. Mrs. Pyle attached her approval in writing to the contract, which was duly executed by the parties on the 18th day of November, 1935. On the same day Mrs. Clark and Mr. Sperry addressed letters to the bank embodying the agreements contained in their contract with the petitioner. The letters and the contract referred to were delivered to the bank, were accepted by it as an agreement conforming to the bank's requirements, and the desired line of credit was granted. To meet the bank's requirement that Mr. Sperry acquire an interest in the petitioner, its capital structure was revised, so that, effective January 1, 1936, Sperry became the owner of one-half of its common stock, and released it from liability on its contract employing him as general manager.

Throughout the taxable periods involved, the bank continued to extend credit to the petitioner and the petitioner remained indebted to the bank. The earned surplus of petitioner on December 31, 1936, was $25,905.33, and on June 30, 1937, was $28,966.36.

By section 14(b) of the Revenue Act of 1936, 26 U.S.C.A. Internal Revenue Acts, p. 823, a surtax was levied upon the undistributed net income of corporations. By subsequent sections of the Act, credits against this surtax were allowed in certain circumstances. We are concerned here only with credits claimed by the petitioner under section 26(c) (1) as follows:

"Sec. 26. Credits of Corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*   \*   \*   \*   \*   \*

"(c) Contracts Restricting Payment of Dividends.—

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly

deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account." 26 U.S. C.A. Int.Rev.Acts, pages 835, 836.

Petitioner claims credits for the taxable periods involved here under the provisions of the Act quoted above, on the ground that it could not distribute dividends during those periods without violating a contrary provision of a written contract executed by it prior to May 1, 1936. The Commissioner denied the credits. The Board of Tax Appeals affirmed on the ground that the contract relied upon by the petitioner did not prohibit the distribution of dividends in any form except in cash, and, therefore, did not meet the requirements of the quoted section of the Act.

■ Assuming, but not deciding, that the transactions recited above resulted in a contract between petitioner and the bank otherwise meeting the requirements of section 26(c) (1), we agree with the Board that it did not prohibit the payment of dividends by petitioner in any form except in cash. The most that can be spelled out of the agreement between the petitioner and the bank is that, so long as the petitioner remained indebted to the bank, annual distributions of corporate funds by way of dividends, salaries, bonuses, or advances should not exceed $12,000. The sole purpose of the agreement was to compel the petitioner to keep on hand sufficient cash to enable it to continue the operation of its business. In the light of the circumstances underlying the execution of the agreement, it seems clear that the parties did not by the contract intend to prohibit the distribution of corporate profits in any other form legally available to the petitioner. Certainly the contract contained no express prohibition against distributions other than in cash of the earned surplus which the corporation had on hand at the end of each of the taxable periods involved. Nor does it appear that such a distribution of corporate profits would have resulted in prejudice to the bank or would have prevented the realization of the purpose for which the agreement was made. For example, the corporate surplus on hand

might have been transferred to capital, and a dividend paid in shares of the corporation without impairing the corporation's cash position to the prejudice of the bank.

■ Since the contract relied on here prohibited the distribution of profits of the corporation only in the form of cash, it does not meet the requirements of the Revenue Act. In order to be entitled to the credit provided by section 26(c) (1), the petitioner must be unable to distribute profits in the form of dividends without violating the terms of a written contract, executed by the petitioner and expressly dealing with dividends. In the absence of words of limitation in the Act, we must hold that, at the very least, the intention of Congress was to grant the credit claimed only when the distribution of dividends in any form taxable in the hands of the shareholders was prohibited by a contract otherwise complying with the terms of the Act. Commissioner v. Columbia River Paper Mills, 9 Cir., 127 F.2d 558, 561; cf. United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, 26, certiorari denied 316 U.S. 671, 62 S.Ct. 1042, 86 L.Ed. 1746. Since the section of the Act in question grants a credit in the nature of an exemption from taxation, it must be strictly construed, and the taxpayer must sustain the burden of showing compliance with its exact terms. Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; Helvering v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 106, 87 L.Ed. ——; Helvering v. N. O. Nelson Company, 8 Cir., 133 F.2d 846; Hobbs-Western Company v. Commissioner, 8 Cir., 133 F.2d 165; Mastin Realty & Mining Co. v. Commissioner, 8 Cir., 130 F.2d 1003.

The petitioner concedes that if the decision of this Court in United States v. Dakota Tractor & Equipment Co., supra, is correct, the decision here should go against it, but the petitioner criticizes the conclusion reached in that case, as well as the reasoning upon which it is based. The facts in that case clearly sustain the holding of the Court that the contract there in question did not prohibit the distribution of dividends in any form except in cash, and we think the conclusion of the Court in that case, that a contract so limited would not entitle taxpayer to the credit allowed by section 26(c) (1), is correct, and in accord with the decision in Commissioner v. Columbia River Paper Mills,

supra. We are not concerned here with any other question which the Court may have decided in the case under discussion, nor with the reasons advanced in support of the Court's decision upon it. The question whether a contract restricting any payment of dividends except in the form of shares not taxable as income in the hands of shareholders (Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570) would entitle a corporation to the credits allowed by section 26(c) (1) against the surtax on undistributed profits is not before us in this case, since the contract involved here is not so limited.

Nor is there any merit in petitioner's argument that the parties construed the contract relied on as prohibiting the distribution of profits by the payment of dividends in any form. The evidence relied upon to support this contention is that in 1936 the petitioner requested the bank to grant it permission to pay a dividend, and the bank refused. The evidence, however, fails to show in what form the dividend was to be paid. Later, in 1937, the petitioner requested, and the bank granted, permission to pay a dividend partly in cash and partly in notes of the corporation. The petitioner proposed to issue short-term notes. The bank considered a short-term note of petitioner the same, in practical effect, as cash, and insisted that the notes should not mature earlier than two years after date. An officer of the bank testified that in requiring the petitioner to make the contract relied upon, the bank wanted to make sure that undue amounts of cash would not be disbursed by the petitioner either in the form of dividends or in the form of salaries. The evidence does not sustain the conclusion that either party to the contract interpreted it to mean that the petitioner could not declare a dividend payable in the form of bonds or long-term obligations of the corporation or in the form of stock dividends. It is true that all of the authorized capital stock of the corporation had been issued at the time the contract between the bank and petitioner was executed, but, so far as this record goes, the corporation was at liberty to amend its charter if necessary to authorize the issue of other capital stock. It had available the necessary earned surplus. Moreover, the parties were not free after May 1, 1936, to add a prohibition to the contract not expressed at the time of its execution. Nor can the exemption claimed rest only upon implication or inference. Commissioner v. Columbia River Paper Mills, supra; Mastin Realty & Mining Co. v. Commissioner, supra.

The decision of the Board of Tax Appeals is affirmed.