**HELVERING, Com'r of Internal Revenue, v. NORTHWEST BANCORPORATION.**

No. 12654.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1944.

Helen Goodner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Hayner N. Larson, of Minneapolis, Minn. (J. B. Faegre and Faegre & Benson, all of Minneapolis, Minn., on the brief), for respondent.

Before THOMAS and JOHNSEN, Circuit Judges, and MOORE, District Judge.

JOHNSEN, Circuit Judge.

The sole question is whether a written contract executed by Northwest Bancorporation on December 30, 1933, which prohibited it from paying any dividends, "except stock dividends", until the conditions on which Reconstruction Finance Corporation had rendered financial assistance to some of the unit banks in the Bancorporation system had been fulfilled,[1] was such a restriction upon dividend payment as entitled Bancorporation to the credit provided for in section 26(c) (1) of the Revenue Act of 1936,[2] and so relieved it from liability for surtaxes under section 14(b) of the Act,[3] upon its undistributed profits for the year 1936.

The Commissioner of Internal Revenue made a deficiency assessment of $73,718.84 against Bancorporation upon its undistributed profits of $359,604.15 for that year, on the ground that, since the contract did not prohibit the issuance of stock dividends, the corporation was not entitled to any credit under section 26(c) (1).[4]

---

[1] The contract prohibited payment of any dividends by Bancorporation, except stock dividends, "without the prior written consent of RFC". RFC had refused to give its consent to the payment of any Bancorporation dividends in 1936.

[2] 49 Stat. 1664, 26 U.S.C.A. Int.Rev. Acts, pages 835, 836:

"§ 26. Credits of Corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

*    *    *    *

"(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account."

[3] 49 Stat. 1655, 1656, 26 U.S.C.A. Int. Rev.Acts pages 823, 824.

[4] Cf. Treasury Regulations 94 (1936 Ed.) Art. 26-2 (b), 26 Code of Fed. Reg. § 3.26-2 (b), which provides:

"The credit provided for in section 26 (c) (1) of the Act is allowable only with

On Bancorporation's petition for redetermination, the Tax Court reversed and held that the corporation was not liable for surtaxes upon its undistributed profits for 1936, because the contract of December 30, 1933, effectively prevented it from making distribution of any taxable dividends during that year. The Tax Court's position, as declared in its unreported memorandum opinion, was that the credit provided by section 26(c) (1) is not affected by the right to pay nontaxable stock dividends, if the credit otherwise is allowable.[5] In arriving at the factual situation involved, the Tax Court resorted to Bancorporation's articles of incorporation and, from such examination, made a finding that the articles provided only for the issuance of common stock, a dividend distribution of which would have been nontaxable to the shareholders.[6] The fact that the corporation could have amended its articles during the taxable year, and thereby have become legally able to issue a dividend of preferred stock,[7] in a form and manner that might have been taxable, was treated as being without significance.

The Commissioner has petitioned for a review of the Tax Court's decision, as being in conflict with our holdings in United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, certiorari denied 316 U.S. 671, 62 S.Ct. 1042, 86 L.Ed. 1746, and Valentine-Clark Corporation v. Commissioner, 8 Cir., 137 F.2d 481. Bancorporation concedes the conflict, but asks us to re-examine and overrule the apposite portions of those decisions.

The arguments made by Bancorporation to uphold the Tax Court's decision have all been before us and been given due consideration in making disposition of the Dakota Tractor and the Valentine-Clark cases, and they were particularly stressed on the argument and in the briefs of the Valentine-Clark case. We have again duly considered them, but they still fail to persuade us that our previous construction of section 26(c) (1) (which is in harmony with the Treasury Department's interpretation in Regulations 94 article 26-2(b) )[8] is incorrect.

■■ There clearly is no merit in Bancorporation's first contention (which goes beyond the position taken by the Tax Court) that the credit provided for in section 26(c) (1) should be held to be operative, if the contract involved simply prohibits the distribution of corporate assets which could be used to satisfy creditors' indebtedness, regardless of whether it attempts to restrict the payment of stock dividends, either taxable or nontaxable. The unsoundness of this argument is patent from the definition made of the term "dividend" in section 115(a) of the Act, "when used in this title" (of which title section 26(c) (1) is a part).[9] We can hardly assume, as Bancorporation would have us do, that, in the enactment of the Revenue Act of 1936, the dominant concern of Congress, under section 26(c) (1), was for

respect to a written contract executed by the corporation prior to May 1, 1936, which expressly deals with the payment of dividends and operates as a legal restriction upon the corporation as to the amounts which it can distribute within the taxable year as dividends. If an amount can be distributed within the taxable year as a dividend—

"(1) In one form (as, for example, in stock or bonds of the corporation) without violating the provisions of a contract, but can not be distributed within the taxable year as a dividend in another form (as, for example, in cash) without violating such provisions, * * * then the amount is one which, under section 26 (c) (1) of the Act, can be distributed within the taxable year as a dividend without violating such provisions."

[5] This view has also been taken in a number of earlier reported decisions of the Board of Tax Appeals (now the Tax Court), which it is unnecessary to enumerate here.

[6] See § 115 (a), (f) and (h), Revenue Act of 1936, 49 Stat. 1687, 1688, 1689, 26 U.S. C.A. Int.Rev.Acts, pages 868, 870; Treasury Regulations 94 Art. 115–7, 26 Code of Fed. Reg. § 3.115–7; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; also Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756, and Helvering v. Sprouse, 318 U.S. 604, 63 S.Ct. 791, 87 L.Ed. 1029, 144 A.L.R. 1335.

[7] Bancorporation was a Delaware corporation, and, under Revised Code of Delaware 1935, § 2058, the stockholders could have amended its articles of incorporation during 1936 to have provided for the issuance of preferred stock and to have permitted the payment of such a stock dividend.

[8] See footnote 4.

[9] See also § 27 of the Act, 49 Stat. 1665, 26 U.S.C.A. Int.Rev.Acts, pages 837, 838.

the possible effect of the undistributed profits surtax upon the position or security of corporate creditors. It is more natural and reasonable to suppose, since it is a revenue measure with which we are dealing, that the recognition given to contracts restricting dividend payments, in section 26 (c) (1), was bottomed rather upon legislative considerations of a probable unfairness to taxpayers who might be caught between the jaws of a statute that sought to force a distribution of profits [10] and a previous contract which left the corporation powerless to take any action whatever in the situation.

A more formidable question, however, is presented by the Tax Court's view that, while the contract required by section 26(c) (1) must prohibit both the distribution of assets and the issuance of taxable stock dividends, the right to the credit is not affected by the fact that the corporation is left free to issue nontaxable stock dividends. As heretofore indicated, we have taken a contrary view in the Dakota Tractor case, 125 F.2d at pages 26, 27.[11] At first blush, some force may appear to be given the Tax Court's position by the provision of section 115(f) (1) [12] of the Act that "A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution." But section 115(f) (1) seems to us to have been intended merely to proclaim the standard, against shareholders, for determining the taxability of stock. dividends in relation to Eisner v. Macomber,[13] 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, and to have no purposed connection, in the corporation's favor, with the use of the term dividends in section 26(c) (1), as an implied limitation of the definition in section 115(a) [14] (which has application generally to the term " 'dividend' when used in this title"). Both taxable and non-taxable stock distributions are dividends within the general definition of section 115 (a).

We recognize, of course, that there reasonably is room under the statute to make either of the two constructions discussed.[15] The strict construction which ordinarly should be applied to a tax exemption provision, plus the weight which properly may be given in a doubtful situation to the previous administrative interpretation,[16] together with the reasons stated in the Dakota Tractor case and the considerations mentioned above, prompt us to adhere to the view that a corporation is not entitled to the credit provided for in section 26(c) (1) of the Revenue Act of 1936, if the written contract involved permits the payment of any form of dividend, whether taxable or nontaxable. If, as we believe, Congress, in granting the

---

[10] The report of the Ways and Means Committee of the House makes it clear that the fundamental aim of the undistributed profits surtax provision in the Revenue Act of 1936 was to stimulate the distribution of corporate profits. See Ways and Means Committee Report No. 2475, 74th Cong. 2d Sess., p. 5; (Paul and) Mertens, Law of Federal Income Taxation, 1939 Cum.Supp., § 32A.01, p. 1387; United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, 26.

[11] But note the expression in the Valentine-Clark case, 137 F.2d at page 483.

[12] 49 Stat. 1688, 26 U.S.C.A. Int.Rev. Acts page 870.

[13] See Helvering v. Griffiths, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843.

[14] 49 Stat. 1687, 26 U.S.C.A. Int.Rev. Acts, page 868:

"§ 115. Distributions by Corporations

"(a) Definition of dividend. The term 'dividend' when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made."

[15] Cf. (Paul and) Mertens, Law of Federal Income Taxation, 1939 Cum.Supp., § 32A.42, p. 1455: "The position has been taken that the prohibition, in the above regulation, of credit if the contract permits any form of dividends to be distributed, probably refers only to 'taxable dividends.' This position is probably correct although it may be argued that the term 'dividend' includes nontaxable as well as taxable dividends."

[16] See Treasury Regulations 94 Art. 26-2 (b), set out in footnote 4.

exemption or credit in section 26(c) (1), was simply respecting the legal situation of a taxpayer whose hands had been completely tied by a previous written contract, then it can hardly be said that there could be no possible legislative concern about whether the corporation was able to make any distribution which would not be taxable to the shareholders. As to a corporation which had been left free to convert its surplus earnings into capital by the issuance of some form of stock dividend, Congress might well—and, we think, did—closely eye even this narrow freedom from legal obstacle, in relation to whether such a surplus should be permitted to "permanently pass into the great beyond as respects the grasp of the undistributed profits tax".[17] The fact can not lightly be overlooked that "we are dealing here with a generally imposed surtax upon the undistributed net income of corporations".[18]

■■■ But, even if the Tax Court's construction of section 26(c) (1) had been correct on the point discussed, we would be compelled to reverse the decision on another ground. In order to determine whether Bancorporation could have issued any taxable stock dividends, the Tax Court resorted to an examination and consideration of the articles of incorporation and by-laws of the corporation. We are of the opinion that the right to the exemption or credit under section 26(c) (1) must be found exclusively in the language of the contract and be demonstrated completely by it, and that Congress did not intend that any part of such a right could be pieced out of collateral material, which neither by specific reference nor by legal implication has been made a part of the agreement. The Supreme Court has pointed out that "Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract." [19] If the corporation's articles and by-laws may be resorted to, for the purpose of ascertaining whether they permit of the issuance of a taxable stock dividend, they may with equal propriety, it would seem, be examined to determine whether the corporation could have so amended them during the taxable period as to have enabled it to make a taxable stock distribution.[20] This would only be to allow the gamboling of a narrow question of tax administration in a judicial meadow of wild flowers. The pursuit could become horizonless.[21] We cannot believe that, on a question involving no fundamental right but merely the scope of a granted exemption, Congress intended that section 26(c) (1) should be open to any such collaterality.

The decision of the Tax Court is reversed and the cause is remanded with directions to enter a redetermination on the basis of the Commissioner's deficiency assessment.

---

[17] J. S. Seidman, "Undistributed Profits Tax Problems", 14 Tax Magazine 453, quoted in (Paul and) Mertens, Law of Federal Income Taxation, 1939 Cum.Supp. § 32A.50, p. 1477.

[18] Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29.

[19] Id. as in footnote 18.

[20] Cf. Valentine-Clark Corporation v. Commissioner, 8 Cir., 137 F.2d 481, 484.

[21] Commissioner v. E. C. Atkins & Co., 7 Cir., 127 F.2d 783, illustrates the trend of such a pursuit. There the court examined the articles of incorporation and found that they provided only for the issuance of common stock. It then apparently went on to the question of whether the corporation could have amended its charter to provide for the issuance of preferred stock, and from there drifted into a consideration of whether it was likely that the Secretary of State, in view of the financial condition of the corporation, would, under Indiana law, have allowed such an amendment of the articles of incorporation to be made. From that point, whither?