## NORTHWESTERN STEEL & WIRE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8535.

Circuit Court of Appeals, Seventh Circuit.

March 1, 1945.

E. H. McDermott and Allin H. Pierce, both of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Sewall Key, Maryhelen Wigle, and Louise Foster, Asst. Attys. Gen., and J. P. Wenchel and John M. Morawski, Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

This appeal involves the correctness of the ruling of the Commissioner, approved by the U. S. Tax Court, which denied taxpayer, the petitioner herein, a credit on its surtax for undistributed profits. The Commissioner assessed a deficiency tax of

---

$40,376.27 (of which $38,449.01 is in dispute) against petitioner for the fiscal year ending July 31, 1937. This assessment grew out of the provision of Revenue Act of 1936 which levied a surtax on the undistributed net income of a corporation.

The question we must determine arises out of the exception appearing in Section 26(c) (1) of said Act, 26 U.S.C.A. Int.Rev. Acts, page 836, which relieves a taxpayer from such surtax if its profits could not be distributed "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

In the instant case petitioner argues that it came within this exception. It relies upon a trust indenture which it executed with the Harris Trust & Savings Bank prior to the statutory deadline. Its existence and terms are conceded by respondent. Said agreement provided in substance that the taxpayer would "not declare or pay any dividends *(other than stock dividends)* on any of the common stock of the company * * * except out of earnings resulting from operations subsequent to July 1, 1935," and then only if after payment, the net current assets of the company were not less than $901,474.74. This agreement was made when petitioner was about to float a $1,250,000 first mortgage bond issue.

Taxpayer asserted, and we accept its statement, that at no time during the tax year were its net current assets more than $901,474.74. It therefore follows that no dividend *other than in capital stock* of the corporation could have been declared during the tax year in question.

The Tax Court held that since the taxpayer could have issued a stock dividend without violating its agreement with the Harris Trust Company, it was not entitled to a credit.

The issue is therefore greatly narrowed. Our decision turns on whether petitioner could have issued a common stock dividend which would have been "a dividend," "without violating a provision of the written (Harris Trust Company) contract."

The issue is further narrowed because taxpayer had no outstanding common stock which it could use for a dividend. A charter amendment was necessary before it could get the stock for a stock dividend.

Petitioner argues that the rational construction of the Act, based on its purpose to raise revenue, called for only such a dividend as could be taxed in the hands of the recipient. Under the decision in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, a common stock dividend to holders of common stock would not be subject to the Federal income tax. Petitioner therefore argues that Congress meant to restrict the dividends in such a way as would not include common stock dividends.

This contention is not without a basis in reason. It has been rejected, however, by several courts. Kaufmann Dept. Stores Securities Corp. v. Commissioner, 3 Cir., 144 F.2d 776; Helvering v. N. W. Bancorporation, 8 Cir., 140 F.2d 958; Commissioner v. Columbia River P.M., 9 Cir., 127 F.2d 558.

Counsel for petitioner concedes that he is backed by no judicial precedent in taking its position and with equal frankness concedes that the three decisions cited are holdings squarely against his contention. He finds, however, a crumb of comfort in the decision of this court in Commissioner v. E. C. Atkins & Co., 7 Cir., 127 F.2d 783. That decision is, however, distinguishable in that the taxpayer there would have violated the Indiana statute if it issued more common stock. In other words, taxpayer's stock, if issued would have been illegally issued. Under these circumstances, this court held that a taxpayer was not required to violate a state statute in order to issue common stock, to bring itself within the exception above noted.

In addition to the three decisions above cited, the Supreme Court, speaking in Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 111, 85 L.Ed. 29, has added to petitioner's burden. While distinguishable in some respects, it is close to controlling. It said:

"* * * it is probably not necessary to go beyond the plain words of section 26(c) (1) in search of the legislative meaning. Certainly, at first blush, few would suppose that when Congress granted a special exemption to corporations whose dividend payments were prohibited by executed written contracts, it thereby intended to grant an exemption to corporations whose dividend payments were prohibited by state law. * * * But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by

adding a precautionary clause that the granted credit can only result from a provision which 'expressly deals with the payment of dividends.'

"That the language used in section 26(c) (1) does not authorize a credit for statutorily prohibited dividends is further supported by a consideration of section 26(c) (2).

"* * * It does not follow that Congress intended to include corporate charters and related state laws in the cautiously limited area permissible for tax credits and deductions under this section. * * * It can not be said, therefore, that the charter provision that the corporation should obey Washington law, including the statutory prohibition against distributing dividends, was a provision of a written contract executed by respondent. * * * On the contrary, what prohibited respondent from paying dividends was a valid law of the State of Washington.

"* * * It has been said many times that provisions granting special tax exemptions are to be *strictly* construed."

We reluctantly follow the judicial precedents and hold that the language of the exception provision must be strictly construed; that petitioner could have issued common stock dividends without violating its contract with Harris Trust Company and therefore it was not precluded by "written contract" from declaring the dividends referred to in the exception appearing in Sec. 26(c) (1) of the 1936 Act. And we further accept the holdings of these decisions that a dividend of common stock, even though the stockholder was not subject to an income tax thereon, defined the only course which petitioner could pursue to avail itself of the exception. In other words, the contract with the creditors must prevent all dividends, stock as well as cash. Petitioner therefore failed to bring itself within the terms of the exception.

It was liable for the excess profits tax assessed against it.

The order of the U. S. Tax Court is

Affirmed.

BRIGGLE, District Judge (concurring).

I am impelled to concur by force of the Supreme Court's decision in Helvering v. Northwest Steel Mills, Inc., 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29.