## COMMISSIONER OF INTERNAL REVENUE v. MIDLAND ELECTRIC COAL CORPORATION.

### No. 8687.

Circuit Court of Appeals, Seventh Circuit.

Dec. 11, 1945.

172

EVANS, Circuit Judge, dissenting.

———◇———

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, Harry Baum, Hilbert P. Zarky, Dept. of Justice, and J. P. Wenchel, Bureau of Int. Rev., all of Washington, D. C., for petitioner.·

William H. Cooke, of Chicago, Ill., William A. Clineburg, Howard W. Vesey and George F. Hirmon, all of Washington, D. C. (Vesey, Wheeler & Prince, of Washington, D. C., of counsel), for respondent.

Before EVANS, SPARKS and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

The Commissioner of Internal Revenue challenges a decision of the Tax Court holding the taxpayer entitled to a credit on its undistributed profits surtax under § 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 835.

November 19, 1935, the taxpayer negotiated a loan in order to refund an outstanding indebtedness of $1,000,000, executing mortgages to secure it. These mortgages contained the following provision: "Mortgagor agrees that until the notes hereinbefore referred to are paid in full together with all interest due thereon that it will not declare and/or pay any dividends upon its issued and outstanding shares of stock which would thereby cause a distribution to shareholders of any aggregate sum in excess of * * * 50% of the net earnings of Mortgagor ·subsequent to the date of this Indenture after payment of taxes, operating expenses, interest and insurance charges and after proper allowance for depreciation and depletion."

The net earnings of the taxpayer for the period from November 19, 1935, to December 30, 1936, amounted to $201,422.53; its adjusted net income for the taxable year was $180,190.12; when the mortgages were executed it had an accumulated earned surplus of at least $478,968.84, and at the beginning of the year 1936, at least $500,-000. December 31, 1935, taxpayer had outstanding 9,930 shares of preferred, and 17,430 of common stock of an authorized issue of 10,000 and 17,500 respectively.

The Revenue Act of 1936 which imposed a surtax upon undistributed net income of a corporation contained provision for certain credits in computing such undistributed net income including § 26(c) (1) which allows as a credit "An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends." Pursuant to this provision, and relying on the contractual restriction, the taxpayer claimed a credit in the amount of the excess of its 1936 adjusted net income over 50% of its post-indenture earnings. The Commissioner disallowed this credit on the ground that the contractual restriction was not complete; the Tax Court reversed this determination; and the Commissioner petitioned us for review of its decision.

In its opinion the Tax Court stated the position of the Commissioner that "the paragraph referred to merely prohibits the payment of dividends in cash out of net earnings, and that it does not prohibit the payment of dividends in any amount out of the accumulated earned surplus, or in some form other than cash such as taxable stock dividends, so that petitioner is not entitled to any credit under the statute quoted above." Construing the problem accordingly, the court considered whether the language of the contract here involved was broad enough to cover taxable dividends of every kind and from all sources. It held, rightly, we think, that "a dividend in kind or a distribution of property by a corporation would certainly be a 'dividend * * * which would thereby cause a distribution.' So, also, would be a taxable stock dividend, which since it is income, must be considered as a distribution to the stockholder of something of value."

The court then proceeded to consider whether payment of a taxable stock dividend would "thereby cause a distribution * * * of any aggregate sum. * * *" As to this it held that the term "aggregate sum" is not limited by necessity to mean only "aggregate amounts of money," and that to restrict it to that meaning would be to unduly narrow the "sweeping language which precedes its use in the clause under consideration. Its use in the sense of 'total value' seems more consistent with the language of the contract surrounding it." It therefore held that dividends in kind or taxable stock dividends would constitute "dividends * * * which would * * * cause the distribution of (an) aggregate sum," and concluded that the restriction contained in the contract extended to dividends in forms other than cash.

In reaching this conclusion, the court distinguished several cases relied upon by the Commissioner[1] on the ground that all of them held that the credit was unavailable where the contract relied on prohibited *cash* dividends specifically, and where there was no restriction on taxable stock dividends. This court has also affirmed the Tax Court in a case involving a similar problem. See Northwestern Steel & Wire Co. v. Com'r, 7 Cir., 147 F.2d 719, where we affirmed the order of the Tax Court, 1 T.C. 1114, which held that a contract providing that the taxpayer would not declare or pay any dividends (other than stock dividends) did not restrict the payment of taxable stock dividends by the taxpayer during the taxable year, hence disallowed the credit claimed under section 26(c) (1). To the same effect is the decision of Kaufmann Dept. Stores Securities Corp., 2 T.C. 656, affirmed 3 Cir., 144 F.2d 776, where the court held that a contract providing, "That the Company will not pay or declare any dividend, *except dividends payable in shares of stock of the Company* * * *" (our ital.) did not restrict payment of a taxable stock dividend, *even though such dividend might be in violation of a charter provision or a statute,* hence adhered to its previously adopted rule that "where the contract did not forbid or expressly permitted the payment of 'stock dividends,' without limitation of that term

to those taxable or nontaxable, and taxable stock dividends could therefore have been paid without violating the terms of the contract, the requirements of section 26(c) (1) were not met."

The Tax Court appears to have taken a different position in the case of Northwest Bancorporation (decision not reported), as indicated by the Court of Appeals for the Eighth Circuit, in Helvering v. Northwest Bancorporation, 140 F.2d 958, 960, "The Tax Court's position, as declared in its unreported memorandum opinion, was that the credit provided by section 26(c) (1) is not affected by the right to pay nontaxable stock dividends, if the credit otherwise is allowable. In arriving at the factual situation involved, the Tax Court resorted to Bancorporation's articles of incorporation and, from such examination, made a finding that the articles provided only for the issuance of common stock, a dividend distribution of which would have been nontaxable to the shareholders." The Court of Appeals reversed the decision of the Tax Court, holding that if the written contract involved permits the payment of any form of dividend, whether taxable or nontaxable, the credit provided under section 26(c) (1) is not available, and that in any event, the right to exemption must be found exclusively in the language of the contract and be demonstrated completely by it, with no right to resort to any other matter such as articles of incorporation or statute.

All three of the Court of Appeals cases referred to were decided after the Tax Court's decision in the case at bar, and the Commissioner here relies strongly upon them, although such reliance does involve a change of position from that taken before the Tax Court. In view of the fact that in each, the contractual prohibition specifically excepted the payment of stock dividends from its operation, as in the earlier decisions distinguished by the Tax Court, we agree with that court that such decisions do not control the question here presented. And, in view of the great weight to be accorded the decisions of the Tax Court (Dobson v. Com'r, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248), we feel impelled to adopt its construction of the

[1] United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, certiorari denied 316 U.S. 671, 62 S.Ct. 1042, 86 L.Ed. 1746; Com'r v. Columbia River Paper Mills, 9 Cir., 127 F.2d 558; Helms Bakeries et al. v. Com'r, 46 B.T.A. 308; Valentine-Clark Corp. v. Com'r, 46 B.T.A. 821, affirmed 8 Cir., 137 F.2d 481; Oregon Pulp & Paper Co. v. Com'r, 47 B T.A. 772.

174

clause, that "it restricted the declaration and/or payment of any taxable dividends of any kind from any source in an amount in excess of 50 percent of the net earnings of petitioner," hence that the taxpayer was entitled to the credit allowed by that court.

Decision affirmed.

EVANS, Circuit Judge (dissenting).

Under Sec. 26(c) (1) it is settled that a credit in an income tax return may not be allowed where under the terms of the contract a dividend may have been legally distributed. In the instant case the taxpayer could have distributed a preferred stock dividend (or even a common stock dividend). It could have declared such a dividend out of its large accumulated surplus.[1]

The contractual restriction in the case before us, as I construe it, merely denied taxpayer the right to declare a cash dividend *out of net earnings,* in excess of half thereof.

A taxpayer seeking a tax credit has the burden of clearly bringing himself within its provisions.[2]

I find this court's opinion in Northwestern Steel & Wire Co. v. Commissioner, 7 Cir., 147 F.2d 719, to be inescapable.

---

[1] Northwestern Steel & Wire Co. v. Commissioner, 7 Cir., 147 F.2d 719; Helvering v. Northwest Bancorporation, 8 Cir., 140 F.2d 958; Commissioner v. Columbia River P. M., 9 Cir., 127 F.2d 558; Kaufmann Department Stores v. Commissioner, 3 Cir., 144 F.2d 776; United States v. Dakota Tractor Co.; 8 Cir., 125 F.2d 20, certiorari denied, 316 U.S. 671, 62 S. Ct. 1042, 86 L.Ed. 1746; Valentine-Clark Corp. v. Commissioner, 8 Cir., 137 F.2d 481; Commissioner v. Oswego Falls Corp., 2 Cir., 137 F.2d 173.

[2] Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; Helvering v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113; Rahr Malting Co. v. United States, 7 Cir., 145 F.2d 867; Commissioner v. Meridian & Thirteenth R. Co., 7 Cir., 132 F.2d 182.