COMMISSIONER OF INTERNAL REVENUE v. COLUMBIA RIVER PAPER MILLS.

No. 9868.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Gerald L. Wallace, William L. Cary, and Edward Hammond, Sp. Assts. to Atty. Gen., for petitioner.

Clarence D. Phillips, of Portland, Or. (Griffith, Peck, Phillips & Nelson, of Portland, Or., of counsel), for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

The question presented by the present petition for review arises under the provisions of the Revenue Act of 1936, relating to undistributed profits tax on corporations.

Respondent is a Washington corporation organized in 1923. As amended in 1925 its articles of incorporation provided for an authorized common capital stock of $2,000,000 divided into 20,000 shares, each having a par value of $100. The articles also authorized issuance of $750,000 shares of 8% cumulative preferred stock divided into 7,500 shares, each having a par value of $100. Respondent's by-laws as amended provided that the preferred stock was

"* * * to be issued upon the following terms and conditions, which shall be set out in each certificate of preferred stock * * *.

"* * * Said preferred stock is issued to and accepted by the holders thereof on the express understanding and agreement entered into between this corporation and present and future holders of the preferred and common stock as follows:

"(A) The holders of the preferred stock shall be entitled to receive out of the surplus or net profits of the corporation, dividends at the rate of eight per cent (8%) per annum, and no more, such dividends to be cumulative * * * All dividends which shall have accumulated on preferred stock shall be paid before any dividend is declared on common stock."

On April 1, 1927, respondent executed its indenture in the nature of a trust deed to secure payment of its bonds. On September 20, 1932, there was outstanding in the hands of the public bonds having a face value of $800,000. On the date last mentioned, respondent executed a supplemental indenture, by the terms of which it agreed to "pay no cash dividends" with exceptions not important here. The holder of each bond executed an extension agreement, in which it was stated that respondent had agreed to "neither declare nor pay any cash dividends prior to April 1, 1937", with exceptions not important here, and that the bondholder's extension promise was not made in consideration of respondent's covenant.

All respondent's common stock was issued prior to, and outstanding during, the year 1936. As of December 31, 1936, respondent's outstanding preferred stock was 6,804½ shares, all of which was issued under the

provisions of the by-laws quoted above, or a similar prior one. No dividends have been paid on such stock since April 1, 1932. The accumulated dividends after that date amounted to $258,571 on December 31, 1936.

Respondent's adjusted net income for 1936 was $23,091.15. Section 14(b) of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev. Acts, page 823, levies a surtax equal to a particular percentage of the undistributed net income of a corporation. Under subdivision (a) (2), "undistributed net income" is defined to be the adjusted net income less "the credit provided in section 26(c), relating to contracts restricting dividends". The credit allowed by § 26(c) (1), 26 U.S.C.A.Int.Rev. Acts, page 836, is: "An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends * * *."

Respondent claimed, in its income tax return for 1936, that it was entitled to a credit under the quoted provision because a written contract prohibited the payment of any dividend.

Petitioner audited respondent's return and disallowed the credit claimed on the ground that the contract with the trustee prohibited payment of only "cash" dividends and not dividends in other forms such as in stock or bonds. On petition for redetermination, the Board held that the respondent "could not have made any distribution to its stockholders except in the form of cash" 43 B.T.A. 263, 266. The Board's reasoning was that under respondent's by-laws it could have paid no dividend of any kind to the common stockholders until the arrears in dividends upon the preferred stock had been disposed of, and that only a "cash" dividend would satisfy the provision for dividends on the preferred stock. The Board said nothing about the possibility that a dividend in some form other than money might be distributed to the preferred stockholders. The Board entered its decision that there was no deficiency in respondent's income tax for 1936. This petition to review such decision was then filed.

The original House Bill authorized a credit only when payment of dividends in any "form" were prohibited by a written contract executed by the corporation prior to March 3, 1936, which expressly dealt with the payment of dividends. Seidman's Legislative History of Federal Income Tax Laws, p. 217. That provision was amended by the Senate Finance Committee, but as amended, credit was not allowed unless the written contract prohibited payment of dividends in any "form". The provision was again amended on the floor of the Senate to the form quoted above, which authorizes the credit if the contract prohibits payment of "dividends" but does not specify "dividends in any form".

We think, however, that the intention of Congress was to authorize the credit only when dividends in any "form" were prohibited. The purpose of the statute was to compel corporations to either distribute their profits so that they could be taxed in the hands of the stockholders, or if any were not so distributed, to tax such profits anyway. It is well known that profits may be distributed in several ways, i.e. in money, or in stock, or in notes. Whatever way is used, the corporate surplus is reduced. Accordingly, Congress permitted a credit if the dividend was paid in cash, in kind or in obligations of the corporation. §§ 14(a)(2), 27 (a), (c) and (d), 26 U.S.C.A.Int.Rev.Acts, pages 823, 837. In such cases, the purpose of the statute was carried out.

In addition, Congress authorized a credit where the corporation could not pay dividends without violating a written contract. If a dividend in one form only were prohibited by such a contract, the corporation still had legitimate methods of reducing its surplus, which was the end sought by the statute. If the corporation took advantage of those methods, it was entitled to credit under the statute. If it failed to take advantage of such methods, it would be illogical to say that the corporation was entitled to the credit anyway. We therefore believe that the Board's holding that "if a dividend could have been paid [that is, was not prohibited by a contract] by the [respondent] during 1936 in any form other than cash the [respondent] has not brought itself within * * * the taxing statute" is correct.

The question, therefore, is: Could respondent have distributed a dividend of cash, stock or notes in 1936 "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends"? It is conceded that the distribution of a cash dividend was prohibited by the contract with the trus-

tee. Respondent contends that under the provisions of its by-laws no dividend of any kind could have been made to the common stockholders. The by-laws, however, do not constitute a "written contract executed by the corporation" within the meaning of the statute. Atlas Supply Co. v. Commissioner of Internal Revenue, 10 Cir., 123 F.2d 356. The by-laws are not "an explicit understanding * * * reduced to writing, signed and delivered." Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S. Ct. 109, 111, 85 L.Ed. 29. There is, therefore, no contract as described in the statute, which prohibits distribution of a stock dividend, and the credit should not have been allowed.

■■ If we assume that the by-laws constituted a contract within the statute, still the credit should have been disallowed, because the by-laws prohibited a dividend on the common stock but not on the preferred stock. Respondent contends that the requirement of an 8% dividend on the preferred stock would not have been satisfied by distribution of a stock dividend. We believe that fact to be immaterial, and that respondent could have distributed a stock dividend to the preferred stockholders even though the required cash dividends were in arrears.

■ Respondent suggests a practical difficulty in that the statute requires the distribution of the dividend during the taxable year, yet it is not until the end of such year that it can be determined what the profits are, in order that the advisability of payment of a dividend can also be determined. That argument is one which should be presented to Congress. We cannot amend the statute.

A suggestion is made by respondent that the statute should be construed in such a manner that "injustice" and "inequality" will be avoided. See Commissioner of Internal Revenue v. Strong Mfg. Co., 6 Cir., 124 F.2d 360, 364. The construction we have given the statute is one which we believe was intended by Congress. If the statute, thus construed, is unjust or unequal, the remedy is action by Congress.

■ Finally, respondent asserts that it was the intention of the parties to the supplemental indenture that no dividends other than cash could be paid. There is no express evidence in the record to that effect. Respondent argues that such conclusion may "be implied from the surrounding circumstances and the provisions of the stock certificates, the by-laws, and the corporate charter". The implication certainly is not compelled. Since the deduction is one of legislative grace, and the burden is on the taxpayer to establish his right to the claimed deduction (Chicago & N. W. R. Co. v. Commissioner of Internal Revenue, 7 Cir., 114 F.2d 882, 887), such burden is not carried under the circumstances mentioned above.

Reversed.