## OVIATT'S v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9997.

Circuit Court of Appeals, Ninth Circuit.

May 19, 1942.

Rehearing Denied July 2, 1942.

Thomas R. Dempsey, Wellman P. Thayer, Dempsey & Thayer, William L. Kumler, and H. Benjamin Thompson, Jr., all of Los Angeles, Cal. (Arthur H. Deibert, of Los Angeles, Cal., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Hubert L. Will, and Frederick E. Youngman, Sp. Assts. to the Atty. Gen., for respondent.

Before MATHEWS, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This appeal is from a decision of the Board of Tax Appeals disallowing a credit of $47,127.61 claimed by petitioner herein, a California corporation with its principal office in Los Angeles, California, against its net taxable income on which a deficiency surtax on undistributed profits for the fiscal year ending January 31, 1937, was assessed by the Commissioner in the amount of $5,802.22, under the provisions of Section 26(c) of the Revenue Act of 1936. Act of June 22, 1936, c. 690, § 26, 49 Stat. 1664, 26 U.S.C.A. Int.Rev.Acts, page 836.

It appears that the petition before the Board sought relief under Section 26 (c), and that the Board's decision centered on subdivision (2) thereof. Petitioner

moved to file a Motion for Rehearing, but the 30 day period allowed by Rule 19 of Rules of Practice of the Board, 26 U.S.C. A. Int.Rev.Code following section 5011, had expired before the motion was made. Grounds of the motion were that the Board should have decided whether or not petitioner was entitled to a credit under subdivision (1) of Section 26(c) of the 1936 Revenue Act as well as subdivision (2). Petitioner also offered to adduce some additional facts before the Board which it thought important. The Board refused to grant the motion, and petitioner cites this as error. We point out that this denial of motion is not an appealable order, and deserves no consideration by this Court. However, we will consider the applicability of subdivisions (1) and (2) of Section 26(c) of the 1936 Revenue Act in determining whether or not the Board erred in refusing to grant the claimed credit to petitioner, which subdivisions read as follows:

"§ 26. Credits of Corporations.

"In the case of a corporation the following credits shall be allowed to the extent· provided in the various sections imposing tax—

" * * *

"(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

"(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; * * *."

The facts upon which petitioner bases its claim for credit are as follows: On June 1, 1934, an agreement was made between Alexander & Oviatt Corporation, as first party; Oviatt's Incorporated, successor to Alexander & Oviatt Corporation, second party, and petitioner herein; James Oviatt, president of the corporation, as third party; and Bank of America National Trust and Savings Association, as fourth party. In general the agreement provided that petitioner, second party acquire the assets and assume the liabilities of first party, and execute its promissory notes, guaranteed personally by third party, in favor of fourth party and other merchandise creditors. Second party was to issue its stock to first party, and said stock was then in turn to be pledged to fourth party, as pledgeholder, to secure ratably the notes to be executed by second party to fourth party. The agreement provided the form of said notes, the payments to be made thereon, and also set out in full the terms of the pledge agreement above mentioned, which reads as follows:

"Pledge Agreement"

"In Consideration of an agreement made as of June 1, 1934, between Alexander & Oviatt Corporation, as first party, Oviatt's Inc., as second party, James Oviatt, as third party, Bank of America National Trust and Savings Association, as fourth party, and certain merchandise creditors of Alexander and Oviatt Corporation who have subscribed and become parties to said agreement, which is hereby expressly referred to, incorporated in and made a part hereof for greater particularity, and as collateral security for the pro-rata and equal payment of the promissory notes and indebtedness referred to in and intended to be secured under said agreement, the undersigned, Alexander & Oviatt Corporation, a corporation, hereinafter called the pledgor, does hereby pledge, assign, transfer and deposit with Bank of America National Trust and Savings Association, as pledgeholder, the following described personal property to be held for the purposes stated in said agreement and with the powers and subject to the conditions hereinafter set forth, to-wit:

"650 shares of the preferred stock of Oviatt's Inc., evidenced by Certificate No....

"1500 shares of the common stock of Oviatt's Inc., evidenced by Certificate No....

"This agreement is executed and delivered subject to the conditions in the aforesaid agreement, and the conditions hereinafter stated, and Bank of America National Trust and Savings Association, as Pledgeholder is given and granted the following powers, to-wit:

"(a) To cause said stock to be transferred to and issued in its own name as pledgeholder;

"(b) While this pledge shall remain in force, to vote said stock as the owner thereof;

"(c) To collect and receive all dividends and distributions upon said stock;

"(d) In the event of either a failure in business or insolvency or bankruptcy or a general assignment of Oviatt's Inc., * * * the pledgeholder is authorized and empowered to sell * * * the whole or any part of said pledged property. * * *

"(e) After deducting all legal and other costs * * * the pledgeholder shall apply the remainder of the proceeds of the sale thereof ratably upon the indebtedness secured hereby, and if said indebtedness be thereby paid in full, the balance of the proceeds of said sale shall be held subject to the order of the pledgor.

 * * * * * *

"Alexander & Oviatt Corporation
  "By ............President.
  "By ............Secretary."

■ As stated in the case of Nevada-Massachusetts Company v. Commissioner, 128 F.2d 347, also filed by this court this day, it is settled that Section 26 of the 1936 Revenue Act being one granting a deduction must be strictly construed, and that the taxpayer must be able to show that he comes within its terms.

It is apparent that under subdivision (1) of Section 26(c) that a credit is allowed equal to that portion of the adjusted net income which the corporation is prohibited from distributing as a dividend by virtue of the express terms of a written contract executed by the corporation prior to May 1, 1936.

■ Petitioner contends that because under the pledge agreement subdivision (c) the pledgeholder was empowered to collect and receive all dividends and distributions upon the stock of petitioner which it held as pledgee, that petitioner was thereby expressly prohibited from distributing dividends to its stockholders, inasmuch as any such dividends would be paid to the pledgee or petitioner's creditors, and not its stockholders, and that petitioner therefore comes within the credit section. Respondent contends that since the pledge agreement was to be signed by First Party, and not the petitioner herein, that it is not a contract executed by the taxpayer corporation as required by the section. We do not find it necessary to decide this point, for we cannot agree with petitioner's contention that the agreement in any way prohibited the distribution of dividends to its stockholders. The mere fact that under the pledge agreement a distribution of dividends on the stock would ultimately come into the hands of the pledgee rather than the stockholders does not constitute a prohibition against distribution of dividends. In fact a distribution of dividends on the stock is a first requirement before any such dividends as such can come into the hands of the pledgee by virtue of the agreement. It is true that petitioner could have paid its income directly on the notes, and not as dividends on the stock, so far as the pledge agreement is concerned, but it is equally true that it could pay dividends on its stock, which thereby prevents petitioner from qualifying for the credit under the section. The fact that such dividends, once paid, came into the hands of the pledgee by virtue of the agreement does not prevent them from being a payment of dividends on the stock. Nor does the fact that the pledgee had all the outstanding stock of the corporation in its possession as pledgee alter that situation. The petitioner does not qualify for the credit under this subdivision of the Act.

■ Nor does petitioner qualify for the claimed credit under subdivision (2) of Section 26(c) of the 1936 Revenue Act, and we are bound to affirm the decision of the Board on this point. The contract does not expressly deal with the disposition of earnings and profits for the taxable year. Any payments to be made under such agreement could be made out of profits or earnings or not out of profits or earnings, and if made out of profits and earnings there is no indication as to what profits and earnings of what taxable year should be utilized, as required by the credit section. A more detailed dis-

cussion of the requirements of this section is contained in our Nevada-Massachusetts Company decision, supra, filed this day.

The decision of the Board of Tax Appeals is affirmed.