## RIVERSIDE CEMENT CO. v. ROGAN.

### No. 2923–Y.

District Court, S. D. California,
Central Division.

Feb. 28, 1945.

O'Melveny & Myers, of Los Angeles, Cal., for plaintiff.

Charles H. Carr, U. S. Atty., and Edward H. Mitchell and George M. Bryant, Asst. U. S. Attys., all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

By this action, the plaintiff, Riverside Cement Company, a Delaware corporation, seeks to recover the sum of $28,652.73, as excess income tax it claims to have paid for the year 1936. Claim for the refund of the amount was duly made and rejected by the then Collector of Internal Revenue for the Southern District of California.

The plaintiff corporation was formed in 1928, at which time it acquired, in exchange for certain of its capital stock, all the assets and assumed all the liabilities of Riverside Portland Cement Company, a California corporation. The plaintiff's certificate of incorporation, filed on April 10, 1928, and its stock certificates delivered to the stockholders prior to May 1, 1936, provided that the plaintiff should set aside on the first day of March, 1929, and on the first day of March of each year thereafter, as a sinking fund for the retirement of the First Preferred stock, "out of the surplus proceeds arising from the business of the corporation", a sum to be determined in accordance with a certain formula. The predecessor corporation had large earnings and profits, which it accumulated during the term of its existence and which, on April 30, 1928, amounted to $9,623,512.97. During the period of the plaintiff's existence, prior to January 1, 1936, its entire net earnings and profits were a little less than the amount of the dividends which it paid. For the year 1936, the amount required to be put into the sinking fund for the retirement of the First Preferred stock, under the formula, was $228,814. The sum was actually set aside for the purpose.

The taxpayer's contention that it overpaid that year the sum of $28,652.73 is grounded on the proposition that, under Section 26(c) (1) of the Internal Revenue Act of 1936, 26 U.S.C.A. Internal Revenue Acts, page 836, it was entitled to a credit for the sinking fund payment.

The Section under which the deduction was claimed, reads, in part, as follows:

"Sec. 26. Credits of Corporation

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

"(a) * * *

"(b) * * *

"(c) Contracts Restricting Payment of Dividends. * * * An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled

to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account."

Article 26–a of Regulations 94 of the United States Treasury Department provides in part as follows:

"Art. 26–2. Credit in connection with contracts restricting payment of dividends. —(a) The credit provided in section 26(c) with respect to contracts restricting the payment of dividends is not available under every contract which° might operate to restrict the payment of dividends, but only with respect to those provisions of written contracts executed by the corporation prior to May 1, 1936, which satisfy the conditions prescribed in the Act. *The charter of a corporation does not constitute a written contract executed by the corporation within the meaning of section 26(c)."* (Emphasis added.)

The Government has resisted the claim upon the ground that the restrictive condition contained in the articles of incorporation and carried over into the stock certificates was not of a character to warrant deduction under Section 26(c) (1). It was also the contention of the Government that, by its very wording, the restrictive clause *(which will be reproduced in full further on in this discussion)* did not call for the establishment of the sinking fund from current earnings, but that, on the contrary, the large surplus which plaintiff, *through its predecessor,* had acquired, through a tax free merger, was available for the purpose.

I state my conclusions on these two fundamental issues.

### I. The Restrictive Provision Is Not a Contract.

■ I am of the view that the clause in plaintiff's stock certificate, carried over from the articles of incorporation, and requiring it to set aside each year a certain sum, determined by a formula, as a sinking fund for the retirement of the First Preferred stock certificates, under which $228,814 was actually set aside for the year 1936, and on which the plaintiff was compelled to pay a tax, is not the type of contract contemplated by Section 26(c) (1) of the Internal Revenue Act of 1936, 26 U.S.C.A. Internal Revenue Acts, page 836,

entitling the plaintiff taxpayer to the credit which it claims.

■■ The case is governed by the interpretation which the Supreme Court in Helvering v. Northwest Steel Rolling Mills, Inc., 1940, 311 U.S. 46, 61 S.Ct. 109, 85 L. Ed. 29, has placed upon this section.

In interpreting the word "contract" contained in Sec. 26(c) (1) and 26(c) (2), the Court said:

"That this section referred to *routine contracts dealing with ordinary debts* and not to statutory obligations is obvious—yet the words used to indicate that the section had reference only to a 'written contract executed by the corporation' are identical with those used in section 26(c) (1). There is no reason to believe that Congress intended that a broader meaning be attached to these words as used in section 26(c) (1) than attached to them under the necessary limitations of 26(c) (2).

"Respondent urges that the legislative history of section 26(c) (1) supports its contention. But, on the contrary, that history points in the other direction. The original House Bill contained separate relief provisions (1) for deficit corporations such as respondent; (2) for corporations contractually obligated to pay debts; and (3) for corporations contractually prohibited from paying dividends. The Senate Finance Committee struck out all three of these House provisions, but substituted an equivalent for the third. An amendment from the Senate floor restored an equivalent of the second. But the bill as finally passed contained no express relief provision relating to deficit corporations. It is true, as respondent contends, that a charter has been judicially considered to be a contract insofar as it grants rights, properties, privileges and franchises. To this extent it has been said that an act of incorporation is a contract between the state and the stockholders. *But it does not follow that Congress intended to include corporate charters and related state laws in the cautiously limited area permissible for tax credits and deductions under this section."* Helvering v. Northwest Steel Rolling Mills, 311 U.S. pages 46, 50, 51, 61 S.Ct. 109, 112, 85 L.Ed. 29. (Emphasis added.)

We thus have a positive limitation of "contracts" to *"routine contracts dealing with ordinary debts",* and the distinct statement that the Congress did not intend to in-

404

clude corporate charters *"in the cautiously limited area permissible for tax credits and deductions under this section."*

 The plaintiff challenges these statements as dicta. It contends that, after all, the Court was dealing with a limitation against the payment of certain dividends by the law of Washington. Consequently, it argues, that this was the only question which called for decision, and any reference to the character of contracts other than statutory interdicts or to the nature of corporate charters in general was not necessary to the decision, and, was, therefore, dictum.

I cannot agree.

I believe that the definition of the terms used in the section cannot be successfully attacked on this basis. The court was interpreting, for the first time, the meaning of the section. Of necessity, in arriving at the decision in the particular case, it was called upon to define the type of contracts which the Congress had in mind when the Section was enacted. So *doing*, the court gave expression to the cardinal principle, which it had declared for many years in tax cases, that provisions of this character, entitling a taxpayer to deductions, should be construed strictly. The Court, therefore, cast upon the tax-payer the burden of showing himself entitled to the deductions. See: Planters Cotton Oil Co. v. Hopkins, 1932, 286 U.S. 332, 52 S. Ct. 509, 76 L.Ed. 1135; Woolford Realty Co. v. Rose, 1932, 286 U.S. 319, 326, 52 S.Ct. 568, 76 L.Ed. 1128; Helvering v. Independent Life Insurance Co., 1934, 292 U.S. 371, 54 S.Ct. 758, 78 L.Ed. 1311; New Colonial Ice Co. v. Helvering, 1934, 292 U. S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; White v. United States, 1938, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172.

The Court has since reaffirmed this principle on the basis of this very decision. See: Helvering v. Northwest Steel Rolling Mills, supra; Helvering v. Ohio Leather Co., 1942, 317 U.S. 102, 106, 63 S.Ct. 103, 87 L.Ed. 113.

Our own Circuit Court of Appeals has sanctioned it. Among its most recent decisions on the subject are: Commissioner of Internal Revenue v. Columbia River Paper Mills, 9 Cir., 1942, 127 F.2d 558; Oviatt's v. Commissioner of Internal Revenue, 9 Cir., 1942, 128 F.2d 352; Rogan v. Walter Wanger Pictures, Inc., 9 Cir., 1944, 143 F.2d 459.

A dictum of the Supreme Court, especially one of recent origin, has compelling persuasion on lower courts. This—especially when the Court is defining, for the first time, the meaning of a statutory enactment—foretells the trend of future decisions. For the definition of terms shows clearly whether the court is adopting a narrow or broad interpretation of the enactment. Whichever it indicates, it has persuasive value, even though the conclusion which the Court arrived at in the particular case might have been reached without the definition. The strictness with which our own Circuit Court of Appeals has construed the provision under discussion shows quite conclusively that it does not consider the definition of the term "contract" in Helvering v. Northwest Steel Mills, supra, to be dictum. See: Commissioner of Internal Revenue v. Columbia River Paper Mills, 9 Cir., 1942, 127 F.2d 558; Rogan v. Walter Wanger Pictures, Inc., 9 Cir., 1944, 143 F.2d 459.

It is significant that all the Circuit Courts of Appeal which have psssed on the section, except the third (see: Lehigh Structural Steel Co. v. Commissioner of Internal Revenue, 3 Cir., 1942, 127 F.2d 67; Eljer Co. v. Commissioner of Internal Revenue, 3 Cir., 1943, 134 F.2d 251; Budd International Corporation v. Commissioner of Internal Revenue, 3 Cir., 1943, 143 F.2d 784), have held that restrictive provisions of the character here involved, whether contained in resolutions of directors or stockholders, or in charters, stock certificates or by laws, do not constitute contracts.

Whatever their binding effect on the corporation, they do not warrant the deduction contemplated by the Congress under Section 26(c) (1) of the Revenue Act of 1936. See: Cooperative Publishing Co. v. Commissioner of Internal Revenue, 9 Cir., 1940, 115 F.2d 1017 (mortgage contract); Antietam Hotel Corporation v. Commissioner of Internal Revenue, 4 Cir., 1941, 123 F.2d 274 (trust indenture); Atlas Supply Co. v. Commissioner of Internal Revenue, 10 Cir., 1941, 123 F.2d 356 (by-law); May Hosiery Mills v. Commissioner of Internal Revenue, 4 Cir., 1941, 123 F.2d 858 (contract requiring sinking fund for retirement of preferred stock); Caroline Mills v. Commissioner of Internal Revenue, 5 Cir., 1942, 126 F.2d 857 (stockholders' resolution); Commissioner of Internal Revenue v. Columbia River Paper Mills, 9 Cir., 1942, 127

F.2d 558 (provision in preferred stock certificate carried over from by-laws); Metal Specialty Co. v. Commissioner of Internal Revenue, 6 Cir., 1942, 128 F.2d 259 (resolution of Board of Directors approved by all stockholders); Oviatt's v. Commissioner of Internal Revenue, 9 Cir., 1942, 128 F.2d 352 (pledge agreement); Warren Telephone Co. v. Commissioner of Internal Revenue, 6 Cir., 1942, 128 F.2d 503 (provision in stock certificate carrying over provision in charter of corporation); Atlantic Co. v. Commissioner of Internal Revenue, 5 Cir., 1942, 129 F.2d 87 (agreement with lending bank); Mastin Realty & Mining Co. v. Commissioner of Internal Revenue, 8 Cir., 1942, 130 F.2d 1003 (resolution of directors in response to letter of creditors); Elliott Addressing Machinery Co. v. Commissioner of Internal Revenue, 1 Cir., 1942, 131 F.2d 700 (charter amendment calling for redemption of stock); Buffalo Slag Co. v. Commissioner of Internal Revenue, 2 Cir., 1942, 131 F.2d 625 (provision in stock certificate creating sinking fund for redemption of preferred stock holders); Valentine Clark Corporation v. Commissioner of Internal Revenue, 8 Cir., 1943, 137 F.2d 481 (agreement with bank); and see Rogan v. Walter Wanger Pictures, Inc., 9 Cir., 1944, 143 F.2d 459.

As these decisions accord with Helvering v. Northwest Steel Rolling Mills, 1940, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, and with my own views, I prefer to follow them rather than contrary ones from the Third Circuit Court of Appeals.

II. The Accumulated Surplus Was Available for the Sinking Fund Payment.

The reasons just stated call for denial of relief to the plaintiff. However, in view of the issues framed, I express my views on the Government's alternative defense.

It appears, without dispute, that the plaintiff had a surplus fund of over nine million dollars which had been accumulated by its predecessor. It is the contention of the Government that this surplus could be resorted to to provide for the sinking fund payment in the particular year. In this I agree.

 A study of the cases cited in Part I of this opinion indicates that before the deduction is ever allowed, the courts interpret the instruments on which the right to deduct is claimed to rest, strictly against the taxpayer. It is quite evident that even when the courts feel that a particular instrument might be considered a contract, they scrutinize closely its language. And if, from such a scrutiny, it can be concluded that either the contractual obligation *was not obligatory as a whole,* or as to the *manner of payment, or not obligatory as to the particular year,* they hold against the deduction. See, for instance, the following decisions of the Ninth Circuit Court of Appeals: Guanacevi Mining Co. v. Commissioner of Internal Revenue, 1942, 127 F.2d 49; Commissioner of Internal Revenue v. Columbia River Paper Mills, 1942, 127 F.2d 558; Nevada-Massachusetts Co. v. Commissioner of Internal Revenue, 1942, 128 F.2d 347; Oviatt's v. Commissioner of Internal Revenue, 1942, 128 F.2d 352; Rogan v. Walter Wanger Pictures, Inc., 1942, 143 F.2d 459. See also: Valentine-Clark Corporation v. Commissioner of Internal Revenue, 8 Cir., 1943, 137 F.2d 481; Kaufmann Dept. Stores, etc., v. Commissioner of Internal Revenue, 3 Cir., 1944, 144 F.2d 776.

 The provision for the creation of the sinking fund here reads:

"(b) After paying or providing for the payment of all accrued and cumulative dividends upon the First Preferred stock at the rate of six dollars ($6.00) per share per annum, the corporation *shall set aside on the 1st day of March, 1929,* and on the 1st day *of March of each year thereafter,* as and for a Sinking Fund for the retirement of the First Preferred Stock, *out of the surplus profits arising from the business of the corporation,* a sum to be then determined by deducting the aggregate dividends that shall have accrued upon the outstanding First Preferred Stock during the preceding calendar year from the product resulting from the multiplication of the total number of theretofore issued shares of First Preferred Stock by seven dollars and seventy cents. ($7.70)" (Emphasis added.)

I am of the view that this clause *does not restrict* the yearly payments into the sinking fund to current earnings.

It merely provides *for a yearly sum to be added to the sinking fund for the retirement of the preferred shares.* The stipulation of facts states that as of the close of business on December 31, 1935, there was "no surplus proceeds arising from the business of the corporation" on hand. On this fact, the taxpayer places his chief objec-

406

tion to resort to the accumulated profits to satisfy the requirement as to the sinking fund for the year 1936. The contention is grounded upon an unrealistic schism between the predecessor corporation and the present or successor corporation which would make them distinct entities. Pragmatically and legally considered, they are not distinct entities.

The present corporation resulted from a tax free merger, which continued the corporate existence of the predecessor corporation. The accumulated surplus belongs as much to the successor, after the merger, as it did to the predecessor before the merger.

And the courts have so held in tax cases. This doctrine was first declared, in a leading case, by the Second Circuit Court of Appeals, Commissioner of Internal Revenue v. Sansome, 1932, 60 F.2d 931. In the following year, the Ninth Circuit Court of Appeals approved the case and applied it in United States v. Kauffmann, 1933, 62 F.2d 1045. The doctrine has been followed since in other circuits. See: Murchison's Estate v. Commissioner of Internal Revenue, 5 Cir. 1935, 76 F.2d 641; Reed Drug Co. v. Commissioner of Internal Revenue, 6 Cir., 1942, 130 F.2d 288, 290:

"It is well settled that under the Revenue Statutes upon a non-taxable reorganization the accumulated profits or earned surplus of the liquidated corporation *pass to the successor corporation with the same status and are available for the payment of dividends by the successor. Such corporate transactions limited to this extent do not break the continuity of the corporate life.* Commissioner [of Internal Revenue] v. Sansome, 2 Cir., 60 F.2d 931; United States v. Kauffmann, 9 Cir., 62 F.2d 1045; Murchison's Estate v. Commissioner [of Internal Revenue], 5 Cir., 76 F.2d 641." (Emphasis added.)

And see: Van Norman Co. v. Welch, 1 Cir., 1944, 141 F.2d 99, 102.

On the basis of the conclusions just stated, the Court makes the following orders:

1. The motion of the plaintiff to exclude from the evidence and consideration of this Court Paragraphs 11 to 14 inclusive and Paragraph 22 of the Stipulation of Facts relating to the merger and to the existence of the accumulated surplus, is denied.

2. Judgment is ordered entered for the defendant that plaintiff take nothing by its complaint, and that the defendant do have and recover of and from the plaintiff its costs and disbursements herein.

Counsel for the defendant will prepare formal findings and judgment in accordance with the views here expressed.